# STATE EX REL. HEINZE ET AL., RELATORS, v. DISTRICT COURT OF THE SECOND JUDICIAL DISTRICT ET AL., RESPONDENTS.

(No. 1,751.)

(Submitted January 6, 1902. Decided April 21, 1902.)

*Mines and Mining—Conflicting Mining Claims—Inspection and Survey Pending Suit—Orders of District Courts—Discretion—Supreme Court—Supervisory Control.*

1. Under Code of Civil Procedure, Sec. 1314, allowing an inspection order to be made at any time pending an action to determine mining claims, the order may be granted before the issues are framed.

2. Under Code of Civil Procedure, Sec. 1314, authorizing an inspection order in actions to determine mining claims, where the respective parties assert title to certain ore bodies, each basing his claim on an asserted ownership of the apex of a vein, to determine which will necessitate a following of the vein from the surface, the court may properly grant an order requiring the owner of the surface openings to allow the other party to enter such openings for the purpose of surveying beneath the surface, though the latter party had complete maps up to the commencement of the suit, after which it was excluded, and work of removing the ores rapidly pushed.

3. Where, in a suit to determine ownership of certain ore bodies, the parties base their respective claims on the asserted ownership of the apex of a vein, to determine which will necessitate a following of the vein from the surface, an order requiring the owner of the surface openings to allow the other party to enter such openings for the purpose of surveying beneath the surface should be limited to those openings alone an inspection of which is necessary to determine the issues, though examination should be allowed of all the workings made in pursuit of the vein in the direction of the strike, to determine the continuity of its direction as well as the angle of the dip.

4. Under Code of Civil Procedure, Sec. 1314, authorizing an inspection order in actions to determine mining claims, the fact that a temporary injunction has been issued does not preclude the issuance of the inspection order, as such provision makes no distinction as to the character of relief sought.

5. Where, in a suit to determine a mining claim, operations are continued pending the action, the court may properly designate employes of the adverse party to make weekly inspection of the premises under reasonable restrictions.

6. The propriety of granting an order of inspection and survey, under Code of Civil Procedure, Sec. 1314, lies very largely in the discretion of the trial court.

7. Inspection orders should always be limited by the necessities of the case.

ORIGINAL petition for a writ of supervisory control, by F. Augustus Heinze and others, against the district court of the Second judicial district and another. Modified and granted.

*Messrs. McHatton & Cotter, Mr. J. M. Denny,* and *Messrs. Toole & Bach,* for Relators.

*Messrs. Forbis & Evans,* for Respondents.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Application for writ of supervisory control. On March 30, 1901, F. Augustus Heinze and the Johnstown Mining Company, a corporation, filed their complaint in the district court of Silver Bow county against the Boston & Montana Consolidated Copper & Silver Mining Company, alleging, in substance, that they were the owners of the Minnie Healy mining claim, in Summit Valley mining district, Silver Bow county, Mont., and of certain veins having their tops or apices therein; that the defendant, by underground workings made within and from adjoining property and premises in its possession and control north of plaintiffs' premises, had entered beneath the surface of the Minnie Healy claim, particularly that portion of the claim lying east of the west end lines of the Piccolo and Gambetta claims; that by means of certain crosscuts, tunnels, etc., defendant had cut into the veins or lodes belonging to the plaintiffs, and was engaged in removing ore therefrom; that the defendant had entered into the possession of these portions of the Minnie Healy veins belonging to plaintiffs, and had ousted and ejected plaintiffs therefrom; and that the defendant asserted title thereto adversely to the plaintiffs, but that such claim of title was without any foundation in fact. The complaint concludes with a prayer that the plaintiffs be decreed to be the owners and entitled to the possession of said veins and ore bodies throughout their entire depth, even though in their descent into the earth they so far depart from a perpendicular as to pass beyond the boundary of the Minnie Healy and into the ground of the defendant; that defendant be required to set forth its adverse claims in order that they might be adjudged to be without foundation;.

that the title of the plaintiffs be forever quieted; and that the
plaintiffs have general relief.   On August 17 thereafter, upon
application of plaintiffs, on the complaint, supported by affi-
davits, the court issued an order requiring the defendant to
appear and show cause on August 31, why an injunction should
not issue to restrain it from removing any ores from the dis-
puted veins and ore bodies pending the suit, and in the mean-
time to cease its operations until a hearing could be had under
the order.   The order also restrained the defendant from min-
ing and extracting ore from certain portions of a lode within
its own ground north of the south side line of the Piccolo, to
which the plaintiffs claimed title by virtue of their extralateral
rights upon the veins described in the complaint.

The situation of the claims of the respective parties, and the
subject of the controversy between them, may be readily un-
derstood by reference to the subjoined diagram.   The Piccolo
and Gambetta claims to the north belong to the defendant.
The portions of the surface of these claims which conflict with
the Minnie Healy, as its location was originally made, are ex-
cluded from the Minnie Healy patent, and there is no question

as to surface rights.    The legal title to the Dayton claim is in the defendant corporation, but an interest therein is claimed by F. Augustus Heinze and his brother, Arthur P. Heinze. The ore bodies in controversy include those found on the 800 and 900 levels in the triangular portion of the Piccolo claim immediately to the north and in the neighborhood of the south line of the Gambetta, the plaintiffs asserting that these belong to the veins which have their apices to the south in the Minnie Healy and pass through the east and west end lines of the claim.    Their claim is therefore based upon an asserted right to follow these veins on their dip toward the north, and into the ground of the defendant.    Though it does not appear at what angle the Minnie Healy veins dip into the earth, it does distinctly appear that the purpose of the action is to settle the controversy as to the title to the ore bodies, not only within the surface boundaries of the Minnie Healy claim, but also within the boundaries of the Piccolo and Gambetta claims.

The plaintiffs' workings are reached through the Minnie Healy shaft.    The defendant conducts its operations through the Leonard shaft.

On September 3, 1901, the defendant in that cause filed its petition therein in the district court, alleging that its only means of access to the workings made by the plaintiffs through the Minnie Healy ground was through the Minnie Healy shaft, and asking that it be allowed access to the Minnie Healy claim and the workings therein for the purpose of making an inspection and survey to obtain facts to enable it to make defense to the suit.    This petition was heard on November 14.    On December 7, after consideration by the court, the order granting the inspection and survey was made according to the prayer of the petition, and it was ordered that the defendant have access to the Minnie Healy claim and all openings therein for the space of ten days, through its agents and representatives, not exceeding six in number, with a surveyor's assistant.    The plaintiffs were required to furnish ingress and egress, and to hoist and lower the defendant's representatives into and from

the premises. It was also further ordered that two representatives of the defendant be permitted to enter the Minnie Healy workings at least once each week to inspect and examine the work therein as it proceeded, until the determination of the action. On December 19, 1901, the plaintiffs in that suit filed their petition in this court asking this court to issue its order of supervisory control directed to the district court, and requiring it to set aside and vacate the order, on the ground that it was not justified by the showing made at the hearing, and that it was oppressive.

The question now before this court is whether the relators, plaintiffs in the action in the district court, are entitled to the relief sought.

It is argued on behalf of relators that the order was not justified, because the evidence adduced at the hearing showed no necessity for it. It appears that the court refused an injunction *pendente lite,* at the hearing under the order of August 17, and that the cause stood on demurrer at the time the order now complained of was made. It is thus manifest, counsel say, that there is yet no defined issue to try, and that the inspection order, if made at all, should have been deferred until the issues in the case should have been made up. We do not think this position tenable. The application was made under the authority of Section 1314 of the Code of Civil Procedure, which allows an inspection order to be made at any time during the pendency of the action. The purpose of the section is to enable the parties to present the facts of the case to the court, so that it may intelligently adjudicate the rights involved. (*State ex rel. Anaconda Copper Mining Co. et al.* v. *District Court,* 25 Mont. 504, 65 Pac. 1020.) In order to do this it is often necessary that the parties should be in possession of the facts at an early stage of the action, so that they may be able to frame intelligently the issues to be tried. Issues properly framed are as essential to a just and fair trial of the rights of the parties as are the facts necessary to support them. The petition alleged, among other things, that the order was nec-

essary to enable the defendant to ascertain its rights in the premises, and the court, as it should, allowed it to produce its evidence to support this allegation, evidently upon the theory that it required other facts than those already in its possession to enable it to frame its defenses. To the evidence thus adduced tending to show cause for the order, as required by the statute, must our attention be directed in order to determine whether the action of the court was proper. It must be borne in mind that the respective parties assert title to certain ore bodies, each basing its claim thereto upon an asserted ownership of the apex of a vein or veins, to which they belong. The question to be tried in the cause is whether the apex is in the ground of the plaintiffs, or in that of the defendants in the action. In order to determine this, it will be necessary to follow the workings from the surface to where these ore bodies are situated, and to present to the court at the hearing all the physical and geological facts from the point of view of both parties, not only as they were open to observation at the time the action was brought, but from time to time as development progresses.

The evidence tended to show that prior to the filing of the complaint the defendant in the action had free access to the Minnie Healy workings, and that it had complete maps of all the work done up to that time. After that date, however, and until the hearing, it had been excluded from the mine, while work was constantly being pushed and ore was being removed at the rate of several hundred tons per day. Access is not possible, except through the Minnie Healy shaft, and the conditions revealed by the work done from March until September were entirely unknown to it. The propriety of granting such an order in any case lies very largely in the discretion of the trial court. Under the facts presented, we cannot say that the court abused its discretion. If it had appeared that the defendant was altogether ignorant of the development work done by the owners of the Minnie Healy mine, we apprehend that no complaint would have been made of the order. It is

upon this development, and the facts as they appear to them, that the plaintiffs base their claim of title to ores beneath the surface of defendant's claims. The defendant, under these circumstances, would have been entitled to the order, almost as a matter of course. The necessity to know the facts as to the development done during the time elapsing from March until September was no less urgent. That it already has part of the information obtainable under the order is no sufficient reason why the defendant is not entitled to the rest. In any event, we do not think that we should direct the district court to vacate the order entirely and postpone the examination until the issues have been made up. It may be that before that time arrives important openings will have become destroyed by caving, or filled with waste, thus rendering the inspection more difficult and expensive.

We think, however, that the order should be modified in one important particular. It appears that the owners of the Minnie Healy mine have extensive workings to the south, both within their own boundaries and beyond them into adjacent claims. The order is extensive enough to permit an inspection and survey of all these workings also. It should have been limited to those only a knowledge of which would avail the defendant; namely, those extending easterly and westerly along the lodes, and from these north toward and into the Piccolo, Gambetta, and Dayton claims. No controversy exists between the parties as to the facts shown by the openings to the south. There is no fact in the record to warrant an order with reference to them. Inspection orders should always be limited by the necessities of the case. When they exceed this limit, they become the means of oppression. Facts might perhaps be shown justifying an order extending the survey to the whole of the Minnie Healy claim; but they do not appear in this record.

It is argued by counsel for the relators that the order should not extend to the openings into the Dayton claim. It will be observed, however, that the claim is made by the relators that the veins in controversy dip toward the north and cross both

of their end lines.   The defendant should be allowed to examine all the workings made in pursuit of these veins in the direction of their strike, in order to determine the continuity of their direction from east to west, as well as the angle of the dip.   Observations made beyond the west end lines of the Piccolo and Gambetta might be of material assistance in determining conditions east of that point and within the sphere of the actual controversy.

It is also suggested by counsel for relators that Section 1314, *supra,* does not authorize an inspection order in a case in which an injunction has been issued, since to permit entry by the enjoined party during the pendency of the injunction dissolves it *pro tanto,* which may be done only upon motion made for that purpose at the proper time.   A sufficient answer to this suggestion is that the statute makes no distinction as to the character of relief sought in the particular action.   Furthermore, upon the relators' own showing, the injunction asked for in the cause was denied.   The suggestion, if of sufficient importance to demand consideration in any case, is not pertinent here.

It is not unusual in controversies of this character to permit inspections from time to time as operations progress during the pendency of the action.   In this case the relators are pursuing their operations in the disputed territory.   We do not think it improper for the court, under these circumstances, to permit two employees of the defendant, designated by name, to make weekly inspection of the premises under reasonable restrictions.

The inspection should be limited to the necessities of the case, as herein indicated.   In other respects the order was properly made, and must therefore stand.

The writ will accordingly issue, directing the district court to modify the order so as to permit the survey and inspection of all the openings in the Minnie Healy claim along the veins in controversy, from east to west, and also all openings made

by relators in pursuit thereof toward the north, whether the same be within or without the boundaries of the claim, specifically restricting the inspection of these limits.

*Modified.*

---

ON REHEARING AND MOTION TO MODIFY THE JUDGMENT.

(Submitted May 6, 1902.   Decided May 12, 1902.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Relators have submitted a motion for a rehearing herein, basing it upon several grounds, all of which question the sufficiency of the evidence to support the order made by the district court.   This was the principal contention made at the hearing. After a careful examination of the facts presented, aided by argument of counsel, we reached the conclusion that the contention could not be sustained.   Nothing is now called to our attention which we think justifies a change in the view then taken.   Since the opinion in this case was written we have had occasion to consider in another case the nature of the showing necessary to support an inspection order in a pending action, with the result that we are confirmed in the conclusion reached upon the investigation of this case.   (*State ex rel. Geyman* v. *District Court*, 26 Mont. 433, 68 Pac. 861.)   The motion for a rehearing is therefore denied.

Counsel for defendants, in connection with the motion for rehearing, have submitted an application for a modification of the order made in the case by this court, so that it may point out definitely what portions of the workings in the Minnie Healy claim are excluded from its operation.   It was our purpose to have the inspection extend to the openings on all the

veins in controversy in the action in the district court, as described in the complaint. They are described therein as passing through the east and west end lines of the Minnie Healy claim; and having their apices between the south side line of the Piccolo claim, as surveyed, and the south side line of the Minnie Healy claim, as surveyed. It is alleged in the complaint that the defendants are trespassing upon all of these veins by means of their workings made through the Leonard shaft. The controversy therefore extends to all of the veins described in the complaint as having their apices north of the south boundary of the Minnie Healy. It appears from the evidence that there are workings extending south from the Minnie Healy into the Tramway. The intention of this court was to require the district court to exclude from the order these workings only, and to permit the examination to extend to all workings made upon any or all of the veins brought into the controversy in the action. As there may likely arise a controversy between the parties as to the extent of the inspection permitted under it, the order of this court will be modified to read as follows:

The writ will accordingly issue directing the district court to modify its order so as to permit a survey and inspection of all of the openings made for the purpose of developing any of the veins found in the Minnie Healy claim, whether these openings extend from east to west, or toward the north, together with all connections between any of them, but excluding all openings leading south into the Tramway claim and connecting the openings therein with those made in the Minnie Healy claim.