STATE EX REL. PARROT SILVER & COPPER COMPANY, RELATOR, *v.* DISTRICT COURT OF THE SECOND JUDICIAL DISTRICT ET AL., RESPONDENTS.

(No. 1,963.)

(Submitted June 26, 1903.   Decided July 24, 1903.)

*Mines and Mining—Action to Determine Extralateral Rights —Inspection and Survey — Order — Expenses — Constitutional Law—Due Process of Law—Taking Property Without Compensation.*

1.   When the possession of the surface of a mining claim and the apex of the vein found therein is shown, with the other facts establishing the right to pursue the vein on its dip, the presumption in favor of the owner of neighboring surface—arising from the doctrine *"cujus est solum, ejus est ad inferos"*—is overturned and disappears.
2.   Under Code of Civil Procedure, Section 1314, the filing of a petition is not required; a motion sufficient to move the discretion of the court is all that is required.
3.   Where it is made to appear from the allegations of the petition, either alone or by reference to the complaint, that there is good cause to believe that an examination of the property will aid the parties in the presentation of their case, and such allegations are supported by substantial evidence, it is sufficient to warrant the making of a proper order under Section 1314, Code of Civil Procedure.
4.   If a stranger, under claim of title, encroaches upon the exterior portions of a lode by means of openings of which he has the exclusive control, Section 1314, Code of Civil Procedure, grants the owner of such exterior portions entry through, and a proper inspection and survey of, such underground workings of his adversary as are necessary to the ascertainment of the facts necessary to enable the owner to protect his rights.

Where the issues do not render necessary an examination of all of defendant's workings, an order under Section 1314, Code of Civil Procedure, authorizing the plaintiffs to survey all the underground workings in the entire group of defendant's claims, is erroneous.

6. Where, in an action to determine the extralateral rights of the owner of lode mining property, it appeared that most of the workings in one of defendant's claims could be readily reached through plaintiffs' shaft, it was error for the court, in granting an order of inspection and survey under Section 1314, Code of Civil Procedure, to allow the plaintiffs access to defendant's workings exclusively through defendant's shafts, and by means of the latter's appliances.

7. Under Section 1314, Code of Civil Procedure, it was error to allow an inspection of defendant's workings, requiring defendant to use its appliances to lower and raise plaintiffs' agents in making such inspection, without providing for the payment by plaintiffs of the expenses incident thereto upon the presentation of a claim therefor by the defendant.

8. Where the evidence indicates conditions to justify a well-grounded belief that the adverse party is trespassing upon applicant's rights, the order, under Section 1314, Code of Civil Procedure, should be made.

9. Section 1314, Code of Civil Procedure, is not in contravention of Section 1, XIV Amendment, U. S. Constitution, as depriving the owner of property without due process of law.

10. Section 1314, Code of Civil Procedure, is not in contravention of Section 14, Article III, Constitution of Montana, prohibiting the taking or damaging of private property without just compensation first made to the owner thereof.

ORIGINAL application by the state of Montana, on the relation of the Parrot Silver & Copper Company, a corporation, against the district court of the Second judicial district of the state of Montana, and Hon. William Clancy, a judge thereof, for an order—under the supreme court's power of supervisory control —to vacate an order of the district court granting an examination, inspection and survey of relator's mines.    Order modified.

STATEMENT OF THE CASE.

On May 18, 1903, an action was brought in the district court of Silver Bow county by the Nipper Consolidated Copper Company, the Cora-Rock Island Mining Company, and Chester A. C⁙⁙, against the Parrot Silver & Copper Mining Company, th⁙ ⁙rpose of which is to determine the extent of the extrala⁙ ⁙ rights of the plaintiffs upon certain veins alleged to have their tops or apices in the Nipper lode claim, and to quiet the title of the plaintiffs to said lode.    The complaint alleges, in su⁙⁙stance, that the plaintiffs are the owners of an undivided

31-36 of the Nipper lode claim (patented) ; that certain veins, containing valuable deposits of gold, silver and copper, have their tops or apices within the surface boundaries thereof; that the plaintiffs are the owners, in possession, and entitled to the possession of said veins, not only within the surface boundaries of the Nipper lode claim, but also to the exterior portions thereof, though upon their descent into the earth they so far depart from the perpendicular as to pass beyond the side lines of said Nipper lode claim; that these veins pass on their strike through the claim nearly parallel with the side lines; that the end lines of the claim are parallel; that the veins upon their descent into the earth pass into and beneath the surface of other claims toward the south of the Nipper claim belonging to or in possession of the defendant, among others, the Kanuck lode, lot 219 ; Dives lode, lot 188; Rialto lode, lot 190; Adventure lode, lot 125 ; lot 86b; Virginius lode, lot 72; Parrot lode, lot 134; Parrot lode, lot 45A; and Bellona lode, lot 122; that plaintiffs are informed and believe that the defendant asserts some claim or interest in the ore bodies lying in the exterior portion of said Nipper veins, between the planes of the end lines thereof extended in their own direction; that by means of underground workings beneath the other claims in possession of the defendant, and particularly beneath the surface of the Kanuck, Adventure, Parrot, lot 45A, Parrot, lot 134, and Bellona claims, the defendant has heretofore, without the consent of the plaintiffs, entered upon the Nipper veins, and removed therefrom, carried away and converted to its own use ores and minerals of great value, in amount unknown to the plaintiffs; that the defendant threatens to continue to enter upon portions of said veins beneath the various claims mentioned and remove valuable ores therefrom, thereby destroying plaintiffs' estate therein; and that the plaintiffs' right to the exterior portions of said veins cannot be adequately protected by suits at law. The prayer is that an injunction issue to restrain trespasses by the defendant pending the litigation; that the defendant be required to set forth the nature of its adverse claims; that a decree be en-

tered declaring said adverse claims to be without foundation; that the defendant be perpetually enjoined upon final decree from asserting any claim or interest in the Nipper veins; and that the plaintiffs have general relief.   On May 25, 1903, the plaintiffs filed in this cause their verified petition asking the court to grant them an order for a survey, examination and inspection of the claims enumerated in the complaint, together with other claims not mentioned therein.   The said petition, omitting the formal parts, is as follows:

"Come now the plaintiffs in the above-entitled action and respectfully show:   (1) That heretofore, and on or about the 18th day of May, 1903, they commenced this action against the above-named defendant by filing their complaint herein, which complaint is hereby referred to and made a part hereof, and caused summons to be issued herein, directed to said defendant, which summons, together with a copy of said complaint, they are informed and believe was heretofore served upon said defendant.   (2) That plaintiffs are informed and believe, and upon such information and belief allege, that the defendant is in possession of all of the following described ground, claiming the same as quartz lode mining claims, to-wit, Kanuck lode, lot 219; Dives lode, lot 188; Rialto lode, lot 190; Adventure lode, lot 125; Original lode, lot 161; lots 86A and 86B; Original lode, lot No. 6; Virginius lode, lot 72; Midnight lode; Grey Eagle lode; Parrot lode, lot 134; Parrot lode, lots 45A and 45B; and Bellona lode, lots 122 and 61; and that underneath the surface of all of the said premises, lying within the planes described in plaintiffs' complaint, drawn, respectively, through the east and west end lines of the Nipper lode claim, and extended in their own direction to the south across said premises, the defendant has various shafts and openings, which are connected with underground workings extending beneath the surface of said premises, and which shafts and openings are in the exclusive possession and control of the defendant, and that defendant, by means thereof, controls the access to said underground workings, and claims the

possession of all of the underground workings aforesaid, and that, by reason thereof, the plaintiffs have no access thereto, and that entry thereto will have to be made by means of the shafts and openings aforesaid in the possession of the defendant. (3) That it is necessary, in order for the plaintiffs to ascertain and protect their rights in the veins and ore bodies described in the complaint and underlying the surface of the aforementioned premises, to have access through and to all of said openings and underground workings, and to have a survey, examination and inspection thereof; and that such access, survey, examination and inspection is necessary for the plaintiffs to have in order to prepare witnesses, and to present the facts in controversy in this action upon the trial thereof, and upon any hearing that may be had in the case. That, in order to do so, it will be necessary for the plaintiffs, by their agents and representatives (not less than six in number), to be permitted to inspect, examine and survey all of the said claims, and all workings and openings therein, and all workings and openings made therefrom, within the territory lying within the planes aforesaid, for a period of at least twenty (20) days; and that, for the purpose of such inspection, examination and survey, the agents and representatives of the plaintiffs be permitted ingress and egress to and from all of the said claims and workings, through the shafts and openings, and by means of the machinery and appliances, of the defendant. That it is also necessary, in order to ascertain and protect the rights of the plaintiffs in the Nipper lode claim and in the veins and ore bodies described in the complaint, and to enable them to present the facts in controversy in said action upon any trial or hearing that may be had therein, that they be permitted, by their authorized and appointed agents, to, at all reasonable times pending the above mentioned suit, inspect and examine all of the underground workings in the premises lying between said planes and above mentioned; and that, for the purpose aforesaid, it is necessary that the petitioners have such inspection, examination and survey as soon as possible. *   *   *"

Upon the filing of this petition the court issued an order to show cause, and fixed the hearing for June 6th. On the day set for the hearing the defendant appeared and made various objections to the granting of the order, and moved the court to dismiss the petition. These grounds are stated, briefly, as follows: That the complaint does not state a cause of action; that it is uncertain, ambiguous and unintelligible; that the petition does not show good cause for making an order of survey and inspection; and that the order, if granted, would constitute a taking of property of the defendant without due process of law, and in violation of the Constitution of the State of Montana and the Constitution of the United States. These objections having been overruled, the defendant filed its answer, putting in issue the material allegations of the petition, and alleging title in itself to certain ore bodies beneath the surface of the claims described. It also admitted ownership of the claims mentioned in the petition, except the Dives. The answer further denied any trespass upon any portion of the Nipper vein, and disclaimed any interest whatever therein. Evidence was introduced, and thereupon the court, after consideration, granted an order permitting the agents of the plaintiffs to enter upon all the lodes mentioned in the petition, except the Dives lode, which does not belong to either party to the controversy, and for the space of thirty days, beginning with the 12th day of June, to examine, inspect and take surveys of all of the underground workings therein. The order further directed that during the said thirty days the defendant should accord to the agents of the plaintiffs the use of all its machinery and other appliances necessary for the purpose of ingress into, and egress from, the premises and workings, and to hoist and lower the said agents at all reasonable hours. It also directed that after the close of thirty days two agents of the plaintiffs should have access to said workings at reasonable times at least once a week, for the purpose of inspection and examination, until the final hearing of the cause.

An application was thereupon made to this court for an order,

under its supervisory power, to vacate the order of the district court. The grounds urged in support of the application are the following: (1) The order to show cause was improvidently granted, because the complaint does not state a cause of action, and because it is so uncertain in the particulars alleged that the defendant should not be required to answer the same, or to show cause why an order of inspection should not be made.

(2) No order of survey should be granted, because the evidence is wholly insufficient to show the existence, within the boundaries of any of the claims in possession of the defendant, except the Adventure claim, of any vein having its apex in the Nipper claim, and as to the Adventure no necessity for an order is shown.

(3) The order is not justified in so far as it permits a survey outside of the Adventure claim, because the proof fails to show the existence of any vein having its apex within the Nipper claim and extending into any of the said claims, and fails to show any workings made by the defendant within the lines of said claims. This is particularly true of the Kanuck, Dives, Rialto, Adventure, Original, Virginius, Midnight, Grey Eagle, Parrot and Bellona.

(4) The order is unauthorized and in excess of jurisdiction, in that it does not limit the survey to workings upon the veins asserted to constitute a part of the Nipper lode claim, but permits a survey and examination of all the workings of the Parrot Company upon any or all of the veins therein, whether they are the parts of the Nipper vein or not.

(5) The order is erroneous and not valid, in that it requires the defendant to raise and lower, by means of its own appliances, through its own shafts, the agents of the plaintiffs, without any provision whatever for ascertainment and payment to the defendant, in advance, of compensation for such services.

The relative positions of the claims in controversy, and the strike and dip of the vein, will be understood by reference to the subjoined diagram:

The Nipper claim is represented by the figure marked "Nipper." The strike of the vein, according to plaintiffs' evidence, is correctly indicated by the words "Nipper Vein," a branch of it extending from a point near the shaft toward the southeast in the direction of the Anaconda claim. The irregular figure indicated by the letters P, Q, R, etc., includes the group of claims belonging to the defendant.

The evidence introduced at the hearing shows that the Nipper vein has been developed by means of what plaintiffs call their "apex drift," about 60 feet beneath the surface, and extending from the shaft to a point near the west boundary of the claim, and also eastward on both branches. An inclined shaft descends from the point marked "Nipper Shaft," following the dip of the vein exposed in the shaft in the direction of the dotted line, to workings in the Adventure, 1,350 feet below the surface. Openings have been made by the plaintiffs in connection with this shaft at the 150, 250, 500, 600, 800, 1,000 and 1,150 foot levels. The defendant has extensive workings in the Kanuck, Rialto, Adventure, Original, lots 6 and 61, A and B, Virginius, Midnight, Grey Eagle, Parrot, lots 134, 45A and 45B, and the Bellona. Most of the workings in the Adventure can be reached by means of plaintiffs' shaft descending from the Nipper. The workings in the other claims, it seems, though the proof showing the exact conditions is not clear, can be reached only through the Parrot shaft, or other openings in possession of the defendant. The workings in the Parrot claim, at and below the 1,000 foot level, extend into the Kanuck and Adventure. At the 1,000 foot level they are upon the Nipper vein. In the Rialto the lowest workings are at the 160 foot level. The depth of the workings in the Adventure and Original claims is not shown. Those in the Parrot (including all the lots) and the Bellona extend down to the 1,500 foot level, but a part of them at the latter level has been made by the Anaconda Company through the Never Sweat, presumably in pursuit of the vein found in that claim. The workings in the Midnight and Grey Eagle are, or seem to be, a part of the general

plan of workings in the Parrot and Bellona claims. The veins exposed in them all strike east and west, and in the Parrot dip at an angle of about 65 degrees to the south. The Nipper vein, near the western boundary of that claim, has a dip of 85 degrees to the south. This angle decreases toward the east until it becomes about 30 degrees at the shaft.

The complaint in the case stands upon demurrer, but, so far as can be judged from the statements contained in the answer to the petition (the defendant did not introduce evidence), the claim of the defendant is that the plaintiffs have no title to any ore bodies within the lines of its claims to the south, for the reason that the Nipper vein crosses both side lines of that claim, as is indicated by what is called the "Blue X Vein" on the diagram, and hence that plaintiffs have no extralateral rights toward the south. From this point of view the side lines of the Nipper are, for the purpose of determining the extralateral rights of the plaintiffs, its end lines. The controversy upon the merits is therefore the same as that involved in the case of *Parrot Silver & Copper Co.* v. *Heinze,* 25 Mont. 139, 64 Pac. 326, wherein we considered, upon application for injunction, conflicting rights between the Little Mina and the Nipper upon the same veins. There is nothing in the evidence to indicate what, if any, workings have been done beneath the surface of the Steward, Oden, Anaconda and Never Sweat claims, which lie between the Nipper and the defendant's claims.

*Mr. W. W. Dixon, Mr. A. J. Shores, Mr. C. F. Kelley,* and *Mr. D. Gay Stivers,* for Relator.

*Messrs. McHatton & Cotter,* for Respondents.

MR. CHIEF JUSTICE BRANTLY, after stating the case, delivered the opinion of the court.

1. This application was made under the provisions of Section 1314 of the Code of Civil Procedure. It is urged in this court, as it was in the court below, that the complaint does not

state a cause of action, and is so indefinite in the particulars
alleged that the defendant should not be required to answer the
same, or show cause why the order applied for should not be
made.

The theory of the action is that, as the end lines of the Nipper
are parallel, and the vein in controversy whose apex is found
therein passes through the end lines, the plaintiffs are entitled
to follow the vein on its dip into the lands of the defendant. It
must be conceded that if this theory is supported by the facts,
and if it further appears that the defendant asserts title to any
of the ore bodies found upon the exterior portions of the Nipper
vein beneath the surface of its claims, the action may be main-
tained, and the plaintiffs should be granted a decree quieting
their title to such ore bodies; for the assertion by the defendant,
under such circumstances, of an adverse claim to exterior por-
tions of the vein, is sufficient to authorize the court to entertain
the action, and to enter such decree therein as the facts justify.
(*Montana Ore Pur. Co.* v. *Boston & Montana C. C. & S. Min-
ing Co.,* 27 Mont. 288, 70 Pac. 1114.) Under the holding an-
nounced in that case, the possession of the surface of a claim
and of the apex of the vein found therein, so situated in its dip
and strike as to give extralateral rights, draws to it also the pos-
session of the exterior portions of the vein, in the same way and
to the same extent as the possession of the surface implies pos-
session of everything perpendicularly beneath it. This pre-
sumption is subject to the *prima facie* presumption, in favor of
the adverse claimant, arising from the principle, *"Cujus est
solum, ejus est ad inferos;"* but when the possession of the sur-
face and apex is shown, with the other facts establishing the
right to pursue the vein on its dip, the presumption arising from
the *cujus solum* doctrine is overturned and disappears. This
must be so; otherwise the owner of a vein which dips beneath
his neighbor's surface, though he has been granted title to it
under his patent, must demonstrate his title to every foot of it
as it descends into the earth after it passes beyond his side lines.
Such a condition would be intolerable. But this is somewhat of
a digression.

We cannot upon this proceeding take up the questions presented upon the demurrer as original questions and decide them. The jurisdiction of this court to try and determine this class of questions is appellate, and not original. It is confined to a review on appeal from the action of the district court thereon in the regular way. That court is one of original general jurisdiction, and questions arising in the ordinary course must be determined by it before the revisory power of this court may be invoked. It is sufficient for the purpose of an application for an order of inspection and survey, so far as the pleadings filed in the district court are converned, that it appear that an action is pending involving title to real estate. We may not look further than to ascertain this fact. If it is made to appear from the allegations of the petition, by the facts stated therein, either standing alone or aided by appropriate reference to the allegations contained in the complaint, that there is good cause to believe that an examination of the property will aid the parties to present their rights in the proper way, and the court to intelligently adjust them, and such allegations are supported by substantial evidence, it is sufficient to warrant the making of the order under proper restrictions; for, if the party making the application should be held to strictness of allegation and proof, he would be required to produce to the court in the first instance the facts which it is the purpose of the application to obtain. The remarks on this subject by this court in *State ex rel. Geyman* v. *District Court,* 26 Mont. 483, 68 Pac. 861, are pertinent, and, we think, are conclusive on the point urged. The district court has jurisdiction of the action. The order was proper, provided the showing made was "good cause," within the meaning of that term as used in the statute. Strictly speaking, the statute does not require the filing of any petition. A motion sufficient to move the discretion of the court is all that is required.

But counsel say that, upon the showing made by the complaint and the petition, the property of which the inspection is sought belongs to the defendant, and not to the plaintiff, while

the statute authorizes inspection and survey of the particular property in controversy, to-wit, the Nipper claim. The statute provides: "The court in which an action is pending for the recovery of real property or mining claims, or for damages for an injury, or to quiet title or to determine adverse claims thereto, or a judge thereof, may, on motion, upon notice by either party, for good cause shown, grant an order allowing to such party the right to enter into or upon the property or mining claim and make survey or measurement thereof, or of any tunnels, shafts or drifts therein, for the purpose of the action, even though entry for such purpose has to be made through other lands or mining claims belonging to parties to the action."

The exterior portions of a lode, situated as it is alleged the Nipper lode is, are substantial parts of the property conveyed by the patent, and if a stranger, under claim of title, encroaches upon such portions by means of openings of which he has exclusive control, the statute furnishes the owner the means of ascertaining the facts necessary to enable him to protect his rights, and authorizes entry for that purpose through the property of his adversary. It authorizes also a survey of the tunnels, shafts and drifts therein for the purpose of the action. If the survey and inspection must be limited with absolute certainty to the openings made upon the lode itself, and to the ascertainment of the physical and geological facts to be found there, the purpose of the statute would be defeated. Its evident intent and purpose is to furnish the court and the parties with all the surrounding facts, so that the action may be conducted to a proper conclusion. The extent of the inspection and survey must be limited only by the necessities of the action as they are made to appear. (*State ex rel. Anaconda Copper Mining Co. v. Dist. Court,* 25 Mont. 504, 65 Pac. 1020.) It is as important to know how to frame the issues in the causes as it is to produce the evidence in support of them. (*State ex rel. Heinze v. Dist. Court,* 26 Mont. 416, 68 Pac. 794.)

The petition, though somewhat general in its statements, is sufficient in substance to support the order, aided, as it is, by

reference to the allegations of the complaint. It does not matter that it and the complaint speak of veins, while the evidence tends to show the existence of a single vein.

2.  The facts, however, as they appear in the record, do not justify the order to the extent to which it goes. It authorizes the plaintiffs to survey all the underground workings in the entire group of defendant's claims, between perpendicular planes passing down through the west end lines of the Nipper and Anaconda claims extended in their own direction to the south. This includes all the openings of all the claims from the surface downward, whether made by the defendant and in its possession or not. When we look at the issues, so far as they are developed in the case, no reason is apparent why the inspection should be had in any of the openings not in reasonable proximity to the Nipper vein on its dip. The plaintiffs assert that the vein dips beneath the defendant's claim at an angle varying at different points along the strike from 85 degrees at the extreme west to 30 degrees near the shaft. It is exposed only in the Adventure, in the Parrot, and perhaps in the Bellona, after it leaves the territory of the Nipper, at and below the 1,000 foot level. The defendant insists that the vein crosses the side lines of the Nipper, and hence that, though it has done some work upon it, the plaintiffs have no right to complain, because they have no right to these portions of the vein. It does not appear that any work has been done in the Rialto claim below the 160 foot level, or that any possible benefit could result from an inspection of the workings of any of the claims above the 1,000 foot level, where the point of conflict is. A different situation would be presented if the defendant claimed the vein at and below the 1,000 foot level by virtue of an older location, and of the union of the Nipper vein with a vein having its apex in defendant's ground. Such an issue would render necessary an examination of all of the defendant's workings from the surface, in order to determine the rights of the respective parties.

A somewhat similar issue was presented in the case of *State ex rel. Heinze* v. *Dist. Court,* 26 Mont. 416, 68 Pac. 794, and

an order of examination and survey granted to the defendant in that case, and extended to the whole of plaintiff's claim, sustained, on the theory that the defendant might be able to learn the facts upon which the plaintiff's claim was predicated, and thus be enabled to frame the issues accordingly. The only necessity for the order in this case appears to be to enable the plaintiffs to sustain the issues tendered to the defendant.

Furthermore, the order in question seems to require the defendant to allow the plaintiffs access to the workings exclusively through shafts, and by means of appliances, in possession of the defendant. This would have been entirely proper, as we shall presently see, if the necessities of the case had demanded such an order. The evidence tends to show, however, that most of the workings in the Adventure can be readily reached through the Nipper shaft. As to these openings, the only burden which the defendant may be called upon to assume is to permit free access to them. The duty of lowering and raising the plaintiffs' agents should have been limited particularly to those workings to which access is not practicable except through the defendant's shafts and by use of its appliances. Again, the order makes no provision for the payment by the plaintiffs of the expenses incident to the lowering and raising of their agents by means of the defendant's appliances. Section 1317 of the statute requires the applicant to pay all the expenses of examination, survey and inspection, and clearly such expenses as are attendant upon access to the property would fall within the purview of this provision. (*State ex rel. Anaconda Copper Mining Co.* v. *Dist. Court,* 26 Mont. 396, 68 Pac. 570, 69 Pac. 103.) The order should have required payment of such expenses upon the presentation of a claim therefor by the defendant.

3. The Dives claim was properly excluded from the order, because it was shown not to belong to the defendant. Defendant, therefore, has no ground to complain with reference to it. The order should also have excluded the Rialto claim, for the reason that there does not appear to be any necessity for any

inspection of it.   None of the openings made in it are below the
160 foot level, and hence no light could be shed upon the issues
involved by an inspection of them.   As to claims mentioned in
the order other than the Adventure, Kanuck, Midnight, Grey
Eagle, Bellona and Parrot, including all of the three lots, the
evidence is confined to these facts, to-wit, that they lie south of
the Nipper claim, that the Nipper vein dips in their direction
at an angle varying between 85 degrees and 30 degrees, that ex-
tensive workings have been done in them, and that they lie gen-
erally along the line of the strike of the vein as shown by the
direction followed by the apex in the Nipper ground.   This
evidence is not very convincing, but we are not willing to say
that it is entirely insufficient to warrant the inclusion of these
claims in the order, especially so in view of the fact that the
workings therein are exclusively in the possession of the defend-
ant, and it is impossible for the plaintiffs to obtain any knowl-
edge of the conditions existing therein without an inspection of
them.   Defendant offered no evidence on the subject, and, even
if it had, the plaintiffs would not be bound by it; and, where the
evidence indicates conditions to justify a well-grounded belief
that the adverse party is trespassing upon the applicant's rights,
the order should be made.   (*State ex rel. Geyman* v. *Dist.
Court,* 26 Mont. 483, 68 Pac. 861.)

It should be steadily borne in mind, both by the courts and
the parties, in controversies of this kind, that the object to be
attained is a just determination of disputed rights, and that the
respective parties must, for the time being, submit to whatever
temporary inconvenience may be cast upon them in order to
accomplish this purpose.

4.   What has already been said as to the extent of the order
disposes of the fourth contention made by the relator.   The
examination and survey should have been confined to the work-
ings upon the Nipper vein, and those in such proximity thereto
that the result would be an aid to the plaintiffs, and not an un-
necessary infringement upon the rights of the defendant.

5. Earnest contention is made that the order is in contravention of Section 1 of the Fourteenth Amendment to the Constitution of the United States, prohibiting the deprivation of property without due process of law, as well as of the provisions of the state Constitution prohibiting the taking or damaging of private property without just compensation first made to the owner thereof. (Constitution, Article III, Section 14.)

In *St. Louis Mining & Milling Co.* v. *Montana Company*, 9 Mont. 288, 23 Pac. 510, similar objections made to an order granted under Section 1317 were considered by this court and overruled. In the same case, on error to the Supreme Court of the United States, that court discussed the various constitutional objections to the order, and, after an extensive examination of the authorities, overruled them all. In concluding its discussion of the question whether or not the making of such orders, and the temporary invasion thereunder of the property of a citizen, is taking property without due process of law, that court said: "In conclusion, it may be observed that courts of equity have, in the exercise of their inherent powers, been in the habit of ordering inspections of property, as of requiring the production of books and papers; that this power on the part of such courts has never been denied, and if it exists, *a fortiori,* the state has power to provide a statutory proceeding to accomplish the same result; that the proceeding provided by this statute requires notice to the defendant, a hearing, and an adjudication before the court or judge; that it permits no removal or appropriation of any property, nor any permanent dispossession of its use, but is limited to such temporary and partial occupation as is necessary for a mere inspection; that there is a necessity for such proceeding in order that justice may be exactly administered; that this statute provides all reasonable protection to the party against whom the inspection is ordered; that the failure to require a bond, or to provide an appeal, or to have the question of title settled before a jury, is not the omission of matters essential to due process of law. It follows, therefore, that there is no conflict between this statute and the

Fourteenth Amendment of the Constitution of the United States." (*Montana Company* v. *St. Louis Mining & Milling Co.,* 152 U. S. 160, 14 Sup. Ct. 506, 38 L. Ed. 398.) In another place in the opinion, the court, in speaking of the matter of temporary invasion of the property of a citizen for the purpose of aiding in the administration of justice, said: "To 'establish justice' is one of the objects of all social organizations, as well as one of the declared purposes of the Federal Constitution; and if, to determine the exact measure of the rights of parties, it is necessary that a temporary invasion of the possession of either for purposes of inspection be had, surely the lesser evil of a temporary invasion of one's possession should yield to the higher good of establishing justice; and any measures or proceedings which, having the sanction of law, provide for such temporary invasion with the least injury and inconvenience, should not be obnoxious to the charge of not being due process of law."

Nor does such temporary invasion of the property of a party to a controversy fall within the prohibition of the Constitution of Montana forbidding the taking or damaging of private property without compensation first made. Such temporary invasion is not the taking or damaging of property within the purview of the constitutional provision. Every citizen has the right to the exclusive enjoyment of his property, without interruption or invasion; yet this general rule of right must, under the circumstances of the case, yield to the higher right of public necessity, that equal justice may be administered upon conflicting rights of different citizens. Every citizen holds his property subject to this burden, and when the necessity arises his private right must give way to this higher law.

In *Thornburgh* v. *Savage Mining Co.,* District Judge Baldwin, speaking for the United States Circuit Court for the District of Nevada, in discussing this phase of the law, says: "Ought a court of equity, in a mining case, when it has been convinced of the importance thereof for the purposes of the trial, to compel an inspection and survey of the works of the

parties, and admittance thereto by means of the appliances in use at the mine? All the analogies of equity jurisprudence favor the affirmative of this proposition. The very great powers with which a court of chancery is clothed were given it to enable it to carry out the administration of nicer and more perfect justice than is attainable in a court of law. That a court of equity, having jurisdiction of the subject-matter of the action, has the power to enforce an order of this kind, will not be denied. And the propriety of exercising that power would seem to be clear, indeed, in a case where, without it, the trial would be a silly farce. Take, as an illustration, the case at bar. It is notorious that the facts by which this controversy must be determined cannot be discovered except by an inspection of works in the possession of the defendant, accessible only by means of a deep shaft and machinery operated by it. It would be a denial of justice, and utterly subversive of the objects for which courts were created, for them to refuse to exert their power for the elucidation of the very truth—the issue between the parties. Can a court justly decide a cause without knowing the facts?" (7 Morr. Min. R., at page 680.) This language is quoted with approval by the Supreme Court of the United States in *Montana Company* v. *St. Louis M. & M. Co., supra.* In that case the court proceeded, under the inherent power vested in courts of equity, to do whatever was necessary to a proper adjustment of the rights of the parties. If courts of equity have inherent power to make such orders, and for the purpose of making them effective require the party whose property is affected to furnish to his adversary the appliances necessary to gain access to the property, and without which such access is impossible, surely it is within the power of the legislature to provide by statute for the making of the order, and, either expressly or by implication, to authorize the court to make its order effective.

The order complained of is defective, in that it fails to provide the compensation contemplated by Section 1317 of the statute, but the provisions of the statute itself are not in contra-

vention of either the Constitution of the United States or of the state of Montana.

As the necessities of the case may develop from time to time the order may be extended, but for present purposes the district court is directed to modify its order as made in the following particulars: · To exclude the Rialto claim altogether; to omit the requirement that the defendant furnish to the plaintiffs access to the openings in the Adventure by means of the defendant's appliances, except so far as it is shown to be necessary; to exclude from the order all the openings in any of the claims above the 1,000 foot level, and also those in the Parrot and Bellona claims in the possession of the Anaconda Company; and to add a requirement that the plaintiffs pay to the defendant the reasonable expenses incident to the use of the defendant's appliances, so far as such use is necessary to obtain free access to workings that cannot be reached through plaintiffs' own shaft. If, in order to observe these directions, it be found necessary to hear other evidence, the court may hear it at such time as may be convenient.

*Modified.*

Mr. Justice Holloway: I concur in all that is said in the first four paragraphs of the opinion. As to the conclusions reached in paragraph 5, I dissent. I do not think that the precise point in controversy here was involved in *St. Louis M. & M. Co. v. Montana Co.;* 9 Mont. 288, 23 Pac. 510, on error, 152 U. S. 160, 14 Sup. Ct. 506, 38 L. Ed. 398. Upon each of those appeals the contention of respondent was that the mere invasion of private property of another for the purpose of making a survey and inspection does not constitute a taking within the meaning of the Constitution; that "taking," as therein used, means a permanent deprivation of the owner of his property. In that suit access to the workings of the defendant's property could be had through a tunnel, and therefore no question was involved as to the power of the court to compel the defendant to furnish the means of access. Admittedly, the defendant is the

owner of the properties through which the plaintiffs desire to enter and survey the ground in controversy. That being true, in my opinion the statute does not authorize the court to compel the defendant to make use of its coal, engine, hoist and men for the purpose of enabling the plaintiffs to pursue their examination, and; if it did, it would be unconstitutional, as depriving the defendant of its property without due process of law. I cannot understand why the defendant may not shut down work in the Parrot shaft and refuse to operate the same if it desires to do so. I do not agree with the doctrine announced in *Thornburgh* v. *Savage Mining Co.,* 7 Mor. 667.