STATE ex rel. CLARKE, Relator, *v.* MORAN, Defendant.

[No. 1620.]

[Submitted October 24, 1900.   Decided October 29, 1900.

*Constitution — Supreme Court — Original Jurisdiction — Injunction — Mandamus — Election Laws.*

1.   Under the constitutional grant of original jurisdiction to the Supreme Court, the writ of injunction is the equity arm of the Court's original jurisdiction, and it with the other writs granted, fully equip the Court as a court of first resort on all judicial questions affecting the sovereignty of the state, it franchises, or prerogatives, or the liberties of the people.
2.   Under the constitutional grant of original jurisdiction to the Supreme Court, the writ of injunction is made correlative with that of *mandamus*, and may be resorted to to restrain excess just as the writ of *mandamus* may be used in the same class of cases to compel action and supply defects.
3.   Under the constitutional grant of original jurisdiction to the Supreme Court, the writ of injunction may properly be used to control a public officer in the exercise of his duties under the election laws,—i. e. to restrain him from proceeding under a valid election law to act in excess of his duty.
4.   Under the constitutional grant of original jurisdiction to the Supreme Court, *mandamus* will not lie to restrain a public officer who is proceeding to do what the law does not permit.
5.   Under the constitutional grant of original jurisdiction to the Supreme Court, where the facts stated, in an application for the writ of injunction, present a case affecting the interests of the whole people of the state, the Court has jurisdiction to issue the writ.
6.   It is proper that a proceeding in the Supreme Court for an original writ should be instituted in the name of the state by the attorney general, but where public and

private rights meet—under the election laws—the proceeding may be instituted upon the relation of an elector who seeks redress for himself and the great body of the electors to which he belongs.

7. Under the election laws there can be only one regular organization of a party under a particular designation representing a party principle.

8. A political convention not being composed of delegates selected under the regular party call has no authority to act in any capacity for that party.

9. Facts reviewed, and *held*, to warrant the Supreme Court in the exercise of its original jurisdiction to issue the writ of injunction.

Mr. Justice Pigott concurring in the disposition of the case upon the merits, but *dissenting* from the holding that there is a jurisdictional writ of injunction provided for in the Constitution, and from the holding that *mandamus* is not the remedy.

ORIGINAL application by the state on the relation of George A. Clarke for an injunction to restrain John E. Moran, county clerk and recorder of Silver Bow county, from printing upon the official ballot a ticket designated as the "Eight Hour Republican Party" ticket. Demurrer overruled and writ granted.

## STATEMENT OF THE CASE.

Original application for an injunction to restrain John E. Moran, clerk of Silver Bow county, from printing upon the official ballot a ticket designated as the "Eight Hour Republican Party" ticket, which named candidates for county and judicial offices, and for members of the legislative assembly, for Silver Bow county.

The petition states the following facts: On August 27, 1900, there assembled in the city of Butte, pursuant to a call of the regularly constituted authorities of the Republican party, a convention of the party for the purpose of naming party candidates for county and judicial offices, and for members of the legislative assembly. This convention made its nominations and, through its chairman and secretary, filed the proper certificate with the county clerk. The petitioner herein was one of the nominees of this convention for the office of representative in the legislature.

On the 16th of the same month a convention was called by one John Bevan and one W. H. Nichols, signing themselves, respectively, as chairman and secretary, and claiming to represent the regular party organization, to assemble in Butte on

August 25th for the purpose of making the party nominations. Another purpose of this convention was to select delegates to represent the party in the state convention, which was to sit at the city of Helena on September 5th.    In the call of this convention apportionment of delegates was made among the various precincts, but there was an omission to designate places for holding primaries in fourteen out of forty-eight precincts in the county.    The convention assembled pursuant to the call and organized by selecting Samuel H. Treloar and Joseph M. Pyle as chairman and secretary, adopted a platform commending the national administration and declaring in favor of its policies, and, after selecting delegates to the state convention, adjourned subject to the call of the chairman and secretary.    The delegates so selected sought admittance into the state convention but were repudiated on the ground that they had been selected by a convention called without authority and had no right to represent the party.    Delegates selected by the convention of August 27th were seated in their stead.

On September 26th, Samuel H. Treloar and Joseph M. Pyle, as chairman and secretary of the convention of August 25th, published in the Butte Miner, a daily newspaper, the following notice:

"Notice."

"The Republican convention which was held on August 25th and which was adjourned subject to the call of the chair, is hereby called to reconvene on Wednesday 26th inst. at 12 o'clock, noon, at Sutton's Family Theatre to transact such business as may come before it."

At the hour fixed a portion of the delegates assembled.    A full list of candidates for county and judicial offices, and for the legislative assembly, was named, after the adoption of the following resolution:    "We adopt as our party name that of Eight Hour Republican Party, and that it be used at the head of our ticket."    A certificate was properly executed and filed

with the defendant as clerk of the county, under the designation stated in the resolution.

It is further alleged, in substance, that the persons composing the convention last mentioned claimed to represent the regular Republicans of Silver Bow county; that their convention was called as a Republican convention; that notwithstanding these claims, when they found that the were not recognized as such representatives by the state convention, they thereupon under the resolution aforesaid, without further consultation of the people, and without any call, or caucuses, or primaries for any "Eight Hour Republican Party" convention, assumed to nominate a ticket under that designation, when, as a matter of fact, no such party had ever had any existence in Silver Bow county or the state of Montana; that such designation is not of special significance or distinctive of any principle, inasmuch as all the conventions of all parties in the state of Montana, and especially the Republican county convention of Silver Bow county have adopted resolutions favoring an eight hour day for labor; that the ticket thus named was intended and designed to injure the regular Republican ticket by drawing votes therefrom to the Democratic and Populist Fusion ticket; and that the defendant, unless restrained from so doing, will print said ticket upon the official ballot to the injury of petitioner and those in like situation with him.

The petition was filed by consent of the attorney general. Thereupon an order to show cause was issued returnable on October 24th. The defendant interposed a demurrer to the petition and rested upon the questions thus raised. The grounds of the demurrer are: (1) That this Court has no jurisdiction of the subject matter of the action; (2) that the state has no legal capacity to sue; and (3) that the petition does not state facts sufficient to state a cause of action.

*Mr. Wm. H. De Witt,* and *Mr. M. J. Cavanaugh,* for Relator.

*Mr. N. W. McConnell,* and *Mr. J. B. Clayberg,* for Defendant.

MR. CHIEF JUSTICE BRANTLY, after stating the case, delivered the opinion of the Court.

1.   The argument of counsel upon the first ground of the demurrer is, that this Court, in injunction proceedings, sits as a court of equity; and that as such its powers are limited to the protection of civil rights only; that the rights involved herein are purely political; and that this Court therefore has no power to consider or adjudge them, whether the relator be aggrieved or not.

Although this Court in the exercise of its original jurisdiction under Article VIII, Section 3 of the Constitution, has frequently granted writs of injunction to restrain ministerial officers from violation of their duties in connection with the administration of the election laws (*State ex rel. Woody* v. *Rotwit*, 18 Mont. 502; *State ex rel. Russel et al.* v. *Tooker*, *id.* 540; *State ex rel. Metcalf* v. *Johnson*, *id.* 548; *State ex rel· McLaughlin* v. *Bailey*, *id.* 554; *State ex rel. Gillis* v. *Johnson*, *id.* 356; *State ex rel. Matts* v. *Reek*, *id.* 557; *State ex rel. Matts* v. *Fisher*, *id.* 560), the first question presented by the demurrer has never been decided. The power of this Court to issue any original writ was challenged in *In re McKnight*, 11 Mont. 126, but it was there held that the provision in the section cited:   "Said court shall have power in its discretion to issue and to hear and determine writs of *habeas corpus*, *mandamus*, *quo warranto*, *certiorari*, prohibition and injunction, and such other original and remedial writs as may be necessary or proper to the complete exercise of its appellate jurisdiction," is a clear grant of original jurisdiction. The purposes for which the grant was made are not discussed, Mr. Justice Harwood contenting himself by saying: "The writs named are defined in law; and their use in the administration of justice is fixed by long usage and well settled principles." This is well said of all the other writs, except injunction, for they are all common law writs of well defined and well known functions. It is also true as applied to the writ of injunction used, as it ordinarily is, as a judicial writ by

courts of equity in aid of jurisdiction and not as a foundation
of jurisdiction.   But when we examine the Constitution for
other provisions throwing light upon the purpose for which
the power to issue this writ was conferred upon this Court,
and the nature of the relief to be granted by it, we find that
we are entirely in the dark; for there is no other jurisdiction
granted anywhere which this writ may aid, and no suggestion
outside of the use of the word itself and the associations in
which it is found, to aid us in declaring and defining its uses.
For in view of other provisions (Const. Art. VIII, Section 11),
giving the district courts original jurisdiction ''in all cases at
law and in equity,'' and to this Court appellate jurisdiction in
the same class of cases (Art. VIII, Section 3), we must con-
clude that whatever may be its appropriate functions, it is not
intended to be used as a judicial writ in ordinary equity pro-
ceedings for the protection or enforcement of private rights.
The contrary assumption would render the jurisdiction of this
Court merely concurrent with that of the district courts, and
its appellate jurisdiction of no practical use.   Fortunately,
however, pressed for time as we are in a decision of this and
other important questions pending before this Court, we find
the nature and functions of this writ discussed and defined by
the court of another state having a similar constitutional pro-
vision.   In *Attorney General* v. *Railroad Companies,* 35 Wis.
425, an application was made to the Supreme Court for a writ
of injunction to restrain the defendant railroad companies from
exacting tolls for the carriage of passengers in excess of the
rates provided by law.   After calling attention to the fact
that this non-jurisdictional writ is grouped with other juris-
dictional writs, the Court proceeds to discuss the anomalous
character thus impliedly given it and concludes:   ''And,
plainly recognizing the intention of the Constitution to vest in
this Court one jurisdiction, by several writs, to be put to sev-
eral uses, for one consistent, congruous, harmonious purpose,
we must look at the writ of injunction in the light of that pur-
pose, and seek its use in the kindred uses of the other writs asso-
ciated with it.   *Noscitur a sociis* is an old and safe rule of con-

struction, said to have originated with as great a lawyer and judge as Lord Hale, peculiarly applicable to this consideration. Lord Bacon gives the same rule in a more detailed form, more emphatic here.     *Copulatio verborum indicat acceptionem in eodem sensu.*   Here are several writs of defined and certain application classed with one of vague import.   We are to be guided in the application of the uncertain, by its certain associates.   The joinder of the doubtful writ with the defined writs operates to interpret and restrict its use, so as to be accepted in the sense of its associates; so that it and they may harmonize in their use, for the common purpose for which it is manifest that they were all given.   And thus, in this use and for this purpose, the constitution puts the writ of injunction to prerogative uses and makes it a *quasi* prerogative writ.''

Thus, along with the common law prerogative writs of well defined uses, we have a new prerogative, or *quasi* prerogative writ to be applied to uses for which we find it most appropriate; and the result of that case is, that this writ is the equity arm of the Court's original jurisdiction, and that it with the other writs granted, fully arm and equip the Court as a court of first resort on all judicial questions affecting the sovereignty of the state, its franchises or prerogatives, or the liberties of the people.   The writ is made correlative with that of *mandamus*, and thus it may be resorted to to restrain excess, just as the writ of *mandamus* may be used in the same class of cases to compel action and supply defects.   The language of the Wisconsin court is:   ''And it is very safe to assume that the Constitution gives *injunction* to restrain excess, in the same class of cases as it gives *mandamus* to supply defect; the use of the one writ or the other in each case turning solely on the accident of overaction or shortcoming of the defendant.   And it may be that where defect and excess meet in a single case, the court might meet both, in its discretion, by one of the writs, without being driven to send out both, tied together with red tape, for a single purpose;'' and these views are adverted to and approved in subsequent cases by the

same court. (*Attorney General* v. *City of Eau Claire*, 37 Wis. 400; *State ex rel. Attorney General* v. *Cunningham*, 81 Wis. 504, 15 L. R. A. 561; *State ex rel. Lamb* v. *Cunningham*, 83 Wis. 90, 17 L. R. A. 145, and cases cited; see also *Wheeler* v. *N. C. Irrigation Co.*, 9 Colo. 248; *State ex rel. Moore* v. *Archibald*, 5 N. Dak. 359, 66 N. W. Rep. 234).

The execution of the election laws, defendant insists, is a pure exercise of political power, and it therefore does not fall within the jurisdiction of this Court to interfere with a public officer in the discharge of his duties under them. In other words, as no property rights are involved which may be injured by a wrong on his part, this Court has no power to restrain him by means of the writ of injunction, but the relator must be aided, if at all, by means of the writ of *mandamus*. The same question was presented and urged in the case of *State ex rel. Attorney General* v. *Cunningham*, 81 Wis. 504, 17 L. R. A. 561. In that case an application was made upon the relation of Adams county, for an injunction to restrain the secretary of state from giving notice to proceed to the election of members of the legislative assembly under the apportionment act of 1891, on the ground that the act was unconstitutional and void. The relief was granted, the court holding that the controversy presented involved the preservation of a constitutional legislature as well as of the rights of the people of the state to equal representation in the legislative assembly, and as such fell within the original prerogative jurisdiction of the court. Mr. Justice Pinney, in a concurring opinion, says in this connection: "It may well be conceded that courts of equity would not, by reason of their original jurisdiction, have authority to interfere by injunction in a case such as this; but it is to be borne in mind that the writ of injunction under our constitution is put to prerogative uses, of a strictly judicial nature, as a remedy of a preventive character in case of threatened public wrong to the sovereignty of the state, and affecting its prerogatives and franchises and the liberties of the people; their rights being protected in this court by information in the name of the

state, on relation of the attorney general.'' And again, in another place, he says: ''The truth is that the power of the respondent to notify elections is in no just sense whatever political; and, in view of the purely ministerial nature of his duty, it is a misuse of terms to assert that his power or duty is in any sense political. The act he is required as a ministerial officer to assist in executing, by giving the notice, is the result of legislative power, and therefore, it may be said, of political power; but this does not make the act required of the respondent, in giving or refusing to give the notices, which is a mere consequence of the exercise of political power, a political act, so as to prevent judicial examination of his conduct in acting or refusing to act for that reason, if the law is void for conflict with the constitution.'' So in the present case, though the question is presented in a different way. It is not here a question whether a law is unconstitutional and the defendant should be restrained from proceeding under it, but a case where, as we shall presently see, he is proceeding under a valid election law to act in excess of duty. He is proceeding to print upon the official ballot a ticket which he has no authority of law to print upon it. The relator is a candidate for public office. He is entitled to have his name appear upon the ballot under the proper designation equally with his associates. Equally with them and all the other voters in the county he is entitled to vote, and to the use of a ballot for this purpose, with the tickets, and those only, upon it which the law authorizes to go upon it. He is entitled to insist that the defendant shall not only do his duty in causing to be printed the tickets properly nominated, but he, in common with all the other voters, may also insist that their rights may not be impeded and perhaps imperilled by having the ballot weighted down by other tickets which can serve no purpose other than to delay, mislead and confuse them in the exercise of their rights at the ballot box. The right to vote and to be a candidate for office are political rights. The duties of the defendant to prepare and print the ballot have to do with these political rights, for they are the media through which the citizen

may properly and safely express his will in the choice of those who shall serve the public. They are the result of the action of political power, and are themselves only other modes by which the same power is given expression. They nevertheless involve substantial rights which are the subject of judicial examination, protection and enforcement, just as are all other rights which are guaranteed and protected by law.

It is claimed in this case that *mandamus* is a proper remedy and, therefore that injunction is not. With this contention we do not agree. There is not here presented a case in which there is a default in the performance of duties required by law, but one in which the defendant is proceeding to do what the law does not permit. To restrain this excess, as prohibition may not go to a ministerial officer (*State ex rel. Scharnikow* v. *Hogan, ante* p. 379, 62 Pac. Rep. 493), injunction is best suited.

2. It is urged by counsel that the state has no legal capacity to sue in this case, because it appears that the public has no interest in this controversy. The argument is that this Court should exercise its original jurisdiction under the writ of injunction only in cases of *publici juris,* and that as the facts stated in the petition show that only private rights are involved, or, at most, that only the people of Silver Bow county are interested. Our attention is called to Section 23 of the Code of Civil Procedure, which provides that "* * * no action to obtain an injunction must be commenced in the Supreme Court, except in cases where the state is a party, or in which the public is interested, or the rights of the public are involved, but the proper district court has jurisdiction of all injunctions, and the commencement of all actions therefor, except as in this section provided * * *" Waiving the question as to the power of the legislature to prescribe the cases in which this Court may issue an injunction, the argument might be of force if only the election of local officers in Silver Bow county were involved in this case. It might then be urged, though we do not say effectively—for it is not necessary to decide the point—that the case affects only the people of that county

and the controversy should be left to the district court in the
ordinary course of litigation.    The facts stated present a case
affecting directly the interests of the whole people of the
state.   In our representative form of government the whole
people are interested in having the election laws enforced, to
the end that the best possible results may be obtained.
Especially is this true when we are engaged in the selection of
men to whom we at the same time entrust the power to
enact laws for the state, to otherwise regulate public affairs,
and to provide for the collection, appropriation and disburse-
ment of the public revenues.   Not only is every patriotic citi-
zen interested in the selection of suitable candidates for mem-
bers of the law-making body, but every citizen in the state
has a direct personal interest in the proper conduct of the
election by which a choice of candidates is made.   Each county
elects its own members of this body, but, in doing so, it acts
on behalf of the whole people, and the state is just as vitally
interested in the ultimate result as if all the legislators were
chosen by the people at large.

While, in settling such controversies, the Court protects
the personal rights of the candidates, it also performs the much
more important function of restraining a public officer to the
bounds of duty and preserves the ballot from unlawful inter-
ference by sinister influences the object of which is to injur-
iously affect the result to accomplish selfish ends.   So it is
that, conceding the power of the legislature to lay down a rule
limiting the classes of cases in which this Court may issue the
writ, this case falls clearly within the class of those in which
the public is interested or the rights of the public are
involved, and the objection that it is one in which the Court
has no jurisdiction is not sustained.

It is proper that the proceeding should be instituted in the
name of the state.   It is none the less proper that in a case
like the present, where public and private rights meet, the
proceeding should be instituted upon the relation of an elector
who seeks redress for himself and the great body of electors
to which he belongs.   It is not for the attorney general to

determine, whether such a proceeding shall be instituted, but for the Court to say whether it will entertain it when the case is presented for its consideration.  A relator is not indispensable,  but it is desirable that some one should stand to answer for the propriety of the suit and be chargeable with costs if it be determined that the relief sought should be denied.  (*State ex rel. Lamb* v. *Cunningham,* 83 Wis. 90, 17 L. R. A. 145; *State ex rel. Attorney General* v. *Cunningham,* 81 Wis. 504; *State ex rel. Drake* v. *Doyle,* 40 Wis. 185; Merrill on *Mandamus,* Sec. 233).  The relator in the present case has such an interest in the case, both as a citizen and a candidate, that this Court may in its discretion and at the relator's instance, restrain the defendant from a violation of his duty.  The writ has heretofore been issued by this Court on the relation of private parties, as appears from *State ex rel. Woody* v. *Rotwitt, supra,* and the other cases cited, though the propriety of the practice was not considered in any of them.

3.    The facts stated in the petition are clearly sufficient to warrant the relief sought.    It appears that a regular convention of the Republican party was called by the proper party authorities in Silver Bow county, to assemble in the city of Butte on August 27, 1900.    This is not controverted. No other persons belonging to the party, although they assumed to act for it, were clothed with authority to assume control of the party machinery and act for it.  So long as this fact remains, the members of the Republican party of that county, and also this Court, are concluded by it (*State ex rel. Scharnikow* v. *Hogan, ante* p. 383, 62 Pac. Rep. 583; *State ex rel. Kennedy et al.* v. *Martin, id.* 403, 62 Pac. 588; *State ex rel. Hatch et al.* v. *Smart, id.* 413, 62 Pac. Rep. 591). For there can be only one regular organization of a party under a particular designation representing a party principle. It is said by defendant that sufficient appears from the petition to show that there were two rival factions in the party, that the name ''Eight Hour Republican Party'' was assumed in order to give the dissenting faction a distinguishing designation for the information of the electors, and that this case

falls clearly within the principle of *State ex rel. Gillis* v. *Johnson*, 18 Mont. 556. Passing over the allegation of the relator that, as a matter of fact, all the parties in their county platforms favored an eight-hour day for labor, and that the designation assumed is not distinctive of any principle, we do not think this contention sustained. There were rival conventions, the one called by authority, and the other without it. Each claimed to represent the party. The subsequent behavior of the convention of August 25 demonstrates the fact, however, that it did not, after the meeting of the state convention, any longer assume to represent the regular organization. If authorized to act at all, the delegates composing it were authorized to act as Republicans, for they were selected, so far as selections were made at the county primaries, as delegates to a Republican convention. They had no authority to name any other than a Republican ticket. The somewhat summary proceedings of September 26 were taken without consultation with the party electors in the county, and, so far as appears in this proceeding, the delegates assumed power to act as they did in venturing to adopt a name and to nominate a ticket, and to this extent acted for themselves only. The case does not therefore fall within the principle of the case cited, but is governed by the principle of *State ex rel. Scharnikow* v. *Hogan*, cited, and *State ex rel. Russel* v. *Tooker*, 18 Mont. 541; *State ex rel. Metcalf* v. *Johnson, id.* 548; and *State ex rel. McLaughlin* v. *Bailey, id.* 554. The convention not being composed of delegates selected under the regular party call, it had no authority to act in any capacity for the Republican party. The delegates could acquire no authority to act for anyone else until the electors were again consulted, and a representative body selected from among those electors who entertained political opinions in sympathy with those entertained by themselves. It seems that the whole purpose sought was the naming of a different Republican ticket from that named by the regular convention, and to secure it a place upon the ballot to the detriment of the regular ticket.

The demurrer is therefore overruled. The defendant hav-

ing stated to the Court at the hearing that he does not care to resist the issuance of the writ in case the questions presented by the demurrer are decided adversely, it is accordingly ordered that the defendant be enjoined and restrained from printing upon the official ballot the "Eight Hour Republican Party" ticket, and that the defendant be adjudged to pay the costs of this proceeding.

*Writ Granted.*

MR. JUSTICE WORD: I concur.

MR. JUSTICE PIGOTT: I dissent. In my opinion *mandamus*, not injunction, is the remedy to compel the county clerk to certify the proper list of nominations. His ministerial duty, the performance of which the law requires, is to include in the list the names of those candidates who have been nominated conformable to the statute in that behalf enacted, and the names of no others. Injunction will not lie when the remedy at law is plain, speedy and adequate. In the case at bar injunction is used to accomplish the precise result that *mandamus* would effect. The extraordinary jurisdiction of the chancery arm of the Court should never be exercised except in those cases where the remedy which the legal arm of the Court can give is inadequate. I am of the opinion also that Section 3 of Article VIII of the Constitution does not grant to this Court authority to issue the writ of injunction as a jurisdictional writ. I think the writ of injunction mentioned in the section is a writ which may be issued only in a pending suit. It is a remedy in an action. At the time the Constitution was adopted, there was no such writ of injunction as the one issued in the present proceeding; nor was such a writ known to courts of chancery.

While I concur in the disposition of the case upon the merits, I dissent from the holding that there is a jurisdictional writ of injunction provided for by the Constitution, and from the holding that *mandamus* is not the remedy.