## STATE ex rel. BOSTON & MONTANA CONSOLIDATED COPPER & SILVER MINING COMPANY, Relator, v. DISTRICT COURT OF THE SECOND JUDICIAL DISTRICT et al., Respondents.

(No. 2,042.)

(Submitted February 26, 1904.  Decided April 12, 1904.)

*Mines—Action Pending—Inspection and Survey—Expense— Payment — Constitution—Taking Property Without Compensation—Inspection of Books and Papers—Order—Modification.*

1. Where an action was brought to have defendant declared a trustee for the benefit of plaintiff of an interest in mining property, and, after an application for inspection had been filed, plaintiff amended his complaint, without changing the theory of the cause of action or the issues, except that the particulars of the negotiations and the resulting agreements by which plaintiff acquired rights in the property were in some respects different from those stated in the original complaint, the amendment did not necessitate that the proceeding for inspection should be begun *de novo.*

2. Where defendant appeared and resisted a motion for an inspection on its merits, without objecting that the required formalities of demand and notice had not been fully complied with, and it appeared that the action in which the evidence sought was to be used was then pending, and that such evidence was not in plaintiff's possession, but was under defendant's control, and related to the merits of the action, defendant could not object that the order for such inspection was prematurely made.

3. Where, in an action to have defendant declared a constructive trustee of an interest in mining property, plaintiff applied for an inspection of certain books and papers, together with defendant's workings of the mine, and defendant appeared at the hearing and filed a counter affidavit which controverted none of the statements contained in plaintiff's affidavit as to the existence of the letters and other documents, defendant's possession thereof,

or that they related to the merits of the action, but only denied that defendant was in possession of such records, etc., "within the state of Montana," it was no objection that the affidavits on which plaintiff's application was based were on information and belief.

4. Where, on an application for inspection of books and papers, it appeared that the evidence sought was desired for use in a pending action, and that it was in defendant's possession, and related to the merits of the action stated by plaintiff, it was not a prerequisite to the granting of such application that plaintiff should also show that the evidence could not be obtained from other sources.

5. Under Code of Civil Procedure, Section 1810, declaring that an inspection of evidence shall be had within a specified time, an order granting an inspection is defective, where it fails to fix the time at which the inspection shall begin and when it shall be completed.

6. Where an order directed defendant to permit plaintiff to inspect original letters in defendant's possession, a further provision that plaintiff should also be entitled to examine "letterpress copies of such letters" was erroneous.

7. Where, in an action to have defendant declared a constructive trustee of a certain interest in mining property, plaintiff claimed that he had been deprived of the same by reason of a fraudulent conspiracy by defendant and certain others, by means of which defendant acquired title to the property, an order for inspection of defendant's books and papers with reference to such property should have been limited to such of the correspondence between defendant's executive officers and its agents through whom the purchase of the property was made as related to the acquisition of the title to such property.

8. An order granting inspection of the underground workings of a mining claim should determine and fix the means of access, and strictly limit the examination to the workings of which it is necessary for plaintiff to have knowledge in order to make surveys and maps to elucidate the issues in controversy.

9. Under Code of Civil Procedure, Section 1317, requiring plaintiff to pay the cost of an inspection of the underground workings of mining property in controversy, an order granting such an inspection, and arbitrarily fixing the amount to be paid by plaintiff to defendant for lowering and hoisting plaintiff's agents engaged in such inspection at a certain sum, without hearing any evidence as to the actual cost, was erroneous.

10. Under Code of Civil Procedure, Sec. 1317, requiring the applicant for an inspection of mining property to pay all the expenses of examination, etc., an order requiring defendant to use its appliances to lower and raise plaintiff's agents in making such inspection, and providing the amount to be paid therefor, was not objectionable as taking or damaging defendant's property without just compensation.

APPLICATION for a writ of supervisory control by the state, on the relation of the Boston & Montana Consolidated Copper & Silver Mining Company, against the district court of the Second judicial district for the county of Silver Bow, and the Honorable William Clancy, judge of the Second department thereof. Writ granted.

## STATEMENT OF THE CASE.

Application for writ of supervisory control. The action out of which this proceeding arose was commenced in November,

1902. Soon after the complaint was filed, the court, upon the application of the plaintiff, made an order requiring the defendant to produce for the inspection of the plaintiff, and to permit him to copy, certain letters, letterpress copies of letters, maps, stope sheets, stope books, books of account, and a lease and bond executed to the plaintiff by the Comanche Mining Company, all of which, it was averred, contained evidence relating to the merits of the action, and were in possession and control of the defendant. This order was afterwards annulled by this court because in excess of jurisdiction. (*State ex rel. B. & M. C. C. & S. M. Co.* v. *District Court,* 27 Mont. 441, 71 Pac. 602, 94 Am. St. Rep. 831:) The purpose of the action is to obtain a decree declaring the defendant a trustee of the legal title, for the benefit of the plaintiff, to an undivided three-fourths interest in the Comanche lode claim, situate in Silver Bow county. The ground of relief alleged in the original complaint was that the plaintiff in 1893 held a lease and bond upon the claim from the Comanche Mining Company, the owner of it, under the terms of which he had a right to extract ore from the claim for the period of one year by paying certain royalties thereon, with an option to purchase it at any time within the year upon payment of $200,000; that the claim was of great value; that he sold an undivided one-fourth interest therein to one Allen; and that thereafter he had been induced to part with his remaining interest to the defendant for a grossly inadequate consideration by the fraud and misrepresentations of the defendant and others acting in its behalf, including his co-tenant, Allen, whereby the defendant became the successor in interest of the Comanche Mining Company. An accounting of ores extracted by the defendant was also demanded. After the order was annulled, plaintiff made another application to the district court in conformity with the views expressed by this court. This was filed, after notice to defendant, on March 7, 1903. For some reason it was not heard until November 14, 1903. In the meantime the plaintiff had filed an application for leave to amend his complaint. While the application was

pending, and on September 19th, he filed a second motion for inspection, supported by affidavit, which, besides iterating the facts alleged in support of the pending application for inspection, alleged facts tending to show a necessity for an inspection of other documents, etc., mentioned in the proposed amended pleading, and also of the underground workings of the Comanche claim. This motion asked for an order permitting an inspection of the workings. A copy of the proposed amended pleading was attached to the motion. On September 19th the amended complaint was ordered filed, and it was filed on September 26th. Issues were made up by an answer of defendant filed October 17th, and by reply thereto by the plaintiff, filed on November 17th. The ground for relief stated in the amended complaint is that the plaintiff in the year 1893 held a lease and bond for one year upon the east 500 feet of the Comanche claim; that under the terms of another agreement, which was a part of the same transaction, he was given an option to purchase all the stock of the Comanche Company within the year, upon payment of $200,000; that the instrument embodying the latter agreement, to which all the stockholders of the Comanche Company were parties, was deposited with the stock in bank, to be delivered to the plaintiff upon the payment of $200,-000 as therein provided; that thereafter he had other negotiations with the company and the stockholders, and as a result it was agreed that he should have a lease of the whole claim for a year from April 1, 1893, and an option to buy it for $200,000 at any time prior to October 1, 1893; that, upon the execution of the lease and option upon the stock of the company, he entered into possession of the leased portion of the claim, and continued in the development thereof until May 24, 1893, when he assigned an undivided one-fourth interest in his lease and option to one Allen; that thereafter the plaintiff and Allen engaged in developing the claim as co-tenants; that prior to October 1, 1893, he was induced to part with the remaining undivided three-fourths interest in these agreements to Joseph A. Coram and Charles Palmer for a grossly inadequate considera-

tion, upon false and fradulent representations by them and said Allen as to its value; and that, by means of this fraud, to accomplish which the defendant and Coram, Palmer and Allen conspired together, the defendant became the successor in interest of the Comanche Mining Company. It is further alleged that during the time the plaintiff held the lease and bond and the other agreement referred to, and was engaged in developing the property, the defendant was engaged, though without plaintiff's knowledge, in removing ore from the claim by means of underground workings through the Dayton, West Colusa and Mountain View claims, properties belonging to the defendant and adjacent to the Comanche claim, and that since it obtained title to the property it has continued to extract ore, which in the aggregate has amounted to many hundreds of thousands of dollars in value.

The answer denies many of the material allegations of the complaint, and sets forth affirmative defenses—among others, laches on the part of plaintiff, and the statute of limitations.

On November 14th the court heard both applications, treating them as one, and, after having them under advisement until January 27, 1904, granted the order to meet the requirements of the issues made up by the amended pleadings. The material portions of the order are the following:

"Ordered that, within five days after the service upon the defendant of this order, the defendant produce at its office, in the city of Butte, for the inspection of plaintiff, and that it permit the plaintiff to have an inspection of, the following described documents, books and papers, to-wit: (1) All letters written by any of the executive officers of the defendant company, or the company, at Boston, Massachusetts, to the said defendant company or to its superintendent or managing officer at Butte, Montana, or to Joseph A. Coram, which relate to the Comanche mining claim, or the purchase thereof or the acquisition of any interest therein by the defendant company, written between March 1, 1893, and August 30, 1893, or in relation to the stock, or the purchase of the stock, of the Comanche Min-

ing Company, and written between April 1, 1893, and April 1, 1894; also all letterpress copies of said letters; and the said defendant is hereby required to produce the same for the inspection of the plaintiff, whether the same are in the state of Montana or outside of the state of Montana. (2) All letters written by the defendant company, or the superintendent or managing officer of the company, at Butte, Montana, or by Joseph A. Coram, to the said defendant or any of its officers at Boston, Massachusetts, in relation to the Comanche mining claim, or the purchase of the Comanche mining claim or the acquisition of any interest therein by the defendant company, and written between the 1st day of March, 1893, and the 30th day of August, 1893, or in relation to the stock of the Comanche Mining Company, or the purchase of said stock, and written between the 1st day of April, 1893, and the 1st day of April, 1894, and also all letterpress copies of the same. (3) The account kept by the defendant company with the Comanche mine, showing the receipts and disbursements by it on account thereof. (4) All stock transfer books of the Comanche Mining Company, so far as the same show the transfer of any stock of the Comanche Mining Company between the 10th day of August, 1893, and the 1st day of April, 1894. (5) The lease of the east five hundred feet of the Comanche mining claim, executed by the Comanche Mining Company to the plaintiff in the year 1893. (6) That certain instrument executed by the plaintiff bearing date on or about the 27th day of March, 1893, under the terms of which the plaintiff was entitled to purchase the stock of the Comanche Mining Company for the sum of $200,000 or thereabouts.

"And it is further ordered that the defendant permit the plaintiff, by two mining engineers and three assistants, to make an inspection and survey of all workings in the Comanche mining claim, and that, for the purpose of making such inspection and survey, the defendant permit any two mining engineers to be named by the plaintiff, together with three assistants, to have free access to all of the workings in the said Comanche min-

ing claim for a period of thirty (30) days, and to permit such engineers and their assistants to pass through any mining claims owned by the defendant adjacent to the said Comanche mining claim, necessary to be passed through in order to reach the workings of the said Comanche mining claim, or any of them.

"And it is further ordered that the defendant at all reasonable times during the said period lower the said engineers, with their assistants, and hoist them to the surface, in order that they may enter the said workings in the Comanche mining claim, and make their exit to the surface from the same, through such hoists and shafts operated by the defendant on the said Comanche mining claim, or on any claims adjacent thereto, as are usually and customarily employed by the defendant in lowering its men to the workings in the said Comanche mining claim, and in hoisting them to the surface on their making their exit from the same, and that the plaintiff pay the cost of such lowering and hoisting, which the court finds to be $5."

*Mr. A. J. Shores, Mr. C. F. Kelley,* and *Messrs. Forbis & Evans,* for Relator.

*Mr. T. J. Walsh,* for Respondents.

MR. CHIEF JUSTICE BRANTLY, after stating the case, delivered the opinion of the court.

1.  It is argued by counsel for the relator that the order is void for the reason that it was premature, in that it was made with reference to issues not involved in the cause until after the application for it was filed. Under this condition of the case, they say the proceeding should have been begun *de novo;* in other words, that, the pleadings having been amended and the issues changed pending the application, the court was without authority to act upon it. Their argument proceeds upon the assumption that, after the amended complaint was filed, the pleadings presented a case entirely different from that presented by the original pleadings, and hence that the order was the re-

sult of an application made when no action was in fact pending, within the rule laid down in *State ex rel. B. & M. C. C. & S. M. Co.* v. *District Court,* 27 Mont. 442, 71 Pac. 602, 94 Am. St. Rep. 831, and *State ex rel. Mendenhall* v. *District Court,* 29 Mont. 363, 74 Pac. 1078.   This contention cannot be sustained.   The purpose of the action is to have defendant declared a trustee, for the benefit of the plaintiff, of an interest in the Comanche claim.   Under the allegations in the original complaint, the right to recover depended upon the plaintiff's ability to establish a fraudulent conspiracy by the defendant with Coram, Palmer and Allen, by means of which he was induced to part with his interest for an inadequate consideration. This is also the theory of the amended complaint.   The interest involved is the same, the wrong complained of is the same, and the evidence necessary to determine the rights of the parties will be the same, except that the particulars of the negotiations and the resulting agreements by which the plaintiff acquired rights in the property are in some respects different from those stated in the original complaint, and, so far as they are different, demand other evidence to establish them.   On the main issue, however—that of fraud—the evidence required will be the same.

The defendant appeared and resisted the motion for the order upon its merits.   No objection was then made that the required formalities of demand and notice had not been fully complied with.   The action was pending; not only that, but all the issues had been fully made up.   It is apparent from the affidavits on file what issues were tendered by the amended complaint, and what evidence relating to the cause of action stated therein was desired.   It appears from them, also, that the evidence sought was not in the possession of the plaintiff, but in the control of the defendants, and that in fact it relates to the merits of the action.   It further appears that at the time the alleged fraudulent conspiracy was formed and carried out, and plaintiff was induced to part with his interest, the defendant was engaged in removing ore from the claim, and that, in order to determine

this fact, as well as the amount and value of it, an inspection of the underground workings in the claim was necessary.

So far as concerns the accounting, the granting of this portion of the order might well have been deferred until a determination of the main issue in the case, for the right to an accounting will, in any event, depend upon plaintiff's right to recover. Yet the fact that the defendant had removed and was engaged in removing ore at the time when the alleged fraud was perpetrated also relates to the main issue in the case, and will perhaps be competent, as supplying, in part, at least, proof of the motive underlying the alleged conspiracy.

The statute under which the application was made for the inspection of the writings (Code of Civil Procedure, Sec. 1810) provides that the court in which the action is pending, or the judge thereof, may, upon notice, order either party to give the other, within a specified time, an inspection, etc. Inasmuch as the defendant appeared and resisted the application upon its merits, without objection that the proper notice had not been given, it is not now in position to make the objection that the order was prematurely made. If it be conceded that the notice given prior to the actual filing of the amended pleading was insufficient to warrant the court's proceeding to make the order, under the circumstances detailed, the defendant must be held to have waived this informality. The validity of the order must therefore be determined by an examination of the merits of the showing made at the time it was granted, and in view of the issues then presented.

2. It is said that the order is void because the statements contained in the affidavits in support of the motion and in the amended complaint are made upon information and belief. Under the statute, in order to warrant compulsory inspection of papers, it must appear (1) that an action is pending, and that the mover is a party; (2) that the evidence sought is in the possession or control of the adverse party; and (3) that it relates to the merits of the action, if the mover is the plaintiff, or to the defense, if the mover is the defendant. The evident

purpose of it is to enable the party applying to the court to obtain evidence relating to, or necessary to support his side of, the controversy, and not a disclosure of the evidence upon which his adversary relies.

The showing made by the moving papers in this case is upon information and belief of the plaintiff, both as to the existence of the letters and copies, and as to the possession of them and the other documents referred to in the motion. So, also, as to the removal of ore. The facts upon which the plaintiff's information and belief are based are not stated. The defendant, by its agent, appeared at the hearing, however, and filed a counter affidavit. This controverts none of the statements contained in the plaintiff's affidavits, except that it states that the defendant has not in its possession within the state of Montana any of the records, letters, books or documents in question, and that such agent verily believes that none of them can be found. It further denies positively that the stope books, stope sheets and maps are in existence anywhere. The affidavit therefore virtually admits that, while the records, letters, books and documents are not in the possession of the defendant in the state of Montana, they are elsewhere. Under this condition of affairs, the district court was justified in assuming that the lease and option, and the letters, letterpress copies, records and accounts of the Comanche Company are in the possession of the defendant, and that they contain evidence relating to the merits of the action. The court was also justified in drawing the inference that, at the time the plaintiff parted with his interest in the property, the defendant was engaged in removing ore from it. That the court acted upon this inference is clear from the fact that the order does not include an inspection of the stope sheets, maps, etc., which were embraced in the specific denial. In view of the silence of the defendant, under the circumstances, it was properly held to have admitted the allegations of the plaintiff in support of his motion, though made upon information and belief. (*Justice* v. *National Bank,* 83 N. C. 8; *McDonald* v. *Carson,* 95 N. C. 377; *Bundschu* v. *Simon,* 23

Civ. Proc. R. 80, 23 N. Y. Supp. 715; *National Oleo Meter Co.* v. *Jackson,* 54 N. Y. Super. Ct. 444.)

It thus appears that the evidence sought is desired for use in a pending action, that it is in the possession of the defendant, and that it relates to the merits of the cause of action stated by the plaintiff. This brings the application within the rule laid down in *State ex rel. Mendenhall* v. *District Court,* and *State ex rel. B. & M, C. C. & S. M. Co.* v. *District Court, supra.*

It is not indispensably necessary that the moving party show that the evidence sought may not be obtained from other sources —as, for instance, from an examination of witnesses. Allegation and proof of this fact were not required to sustain a bill of discovery under the old equity practice (*Marsh* v. *Davidson,* 9 Paige, 580; *Arnold* v. *Pawtuxett Valley Water Co.,* 18 R. I. 189, 26 Atl. 55, 19 L. R. A. 602); nor does the statute require it. We are not disposed to adopt a more stringent rule under the statute. If it appears that the evidence relates to the cause of action or defense and is in possession of the adverse party, this is sufficient to support the application, the purpose of the statute being to avoid the cumbersome and expensive process by the old bill of discovery. If it is apparent that the evidence may be readily obtained from other sources, and that the order is not sought in good faith, the court should deny the application.

3. The order is too broad in some respects, and defective in others. But we think we may direct the district court to amend and correct it in these particulars without requiring the application to be made *de novo.* The statute clearly requires that the court shall not only fix the time at which the inspection shall begin, but also the time within which it shall be completed. For its words are "within a specified time," indicating that the inspection must not be extended over a longer time than may be reasonably necessary under the facts of the particular case, to be fixed by the court, and not left to the discretion of the moving party. (*State ex rel. B. & M. C. C. & S. M. Co.* v. *District court, supra.*) In that case it was held that the order

was void because no limitation was fixed. That decision was upon *certiorari,* however, and this court may not under that writ undertake to control further proceedings in the district court, or direct what order shall be entered. 4 Ency. Pleading & Practice, 302. In this proceeding the court is not restricted to the narrow rules regulating its powers under that writ, and may direct the inferior court as to its further action upon the application; even requiring, if necessary, the hearing of other evidence, in order that it may grant the proper relief upon the particular application. (*State ex rel. Parrot S. & C. Co.* v. *District Court,* 28 Mont. 528, 73 Pac. 230.)

It will be noted that the order includes not only the original letters in possession of the defendant, but also letterpress copies of them. It is not necessary that the inspection should extend to the letterpress copies. In no event should it extend further than the necessities of the case require.

The order is also too broad in that it extends the inspection to all letters "which relate to the Comanche claim or the purchase thereof, or the acquisition of any interest therein," and also "in relation to the stock of the Comanche Mining Company or the purchase of said stock." The fact that the application demands inspection of documents and letters which are apparently not pertinent to the issues involved does not prevent the granting of an order as to those matters which are pertinent, but the order should not include anything else. So far as it does, it permits the moving party to make a fishing examination of the private papers of his adversary, and thus to violate his constitutional guaranty of security from "unreasonable search and seizure." In this respect, also, the order is an unnecessary invasion of defendant's rights. The inspection should have been limited strictly to such of the correspondence only between the executive officers of the defendant and its agents through whom the purchase was made as relates to the acquisition of title. Other letters relating to the claim itself or the stock of the company, touching matters not connected with the acquisition of title to them by the defendant, cannot in any case be deemed

pertinent to the plaintiff's case, and it was clearly beyond the power of the court to order an inspection of any of them.

In the portion of the order granting an inspection of the underground workings of the Comanche claim, the court exceeded its power in two respects. The defendant is required to permit the inspection of these workings "through such hoists and shafts operated by the defendant on the Comanche claim, or any claims adjacent thereto as are usually and customarily employed by the defendant in lowering its men to the workings in the said Comanache claim, and in hoisting them to the surface on their exits from the same." It is apparent that this provision of the order leaves it to the choice or caprice of the plaintiff to demand of the defendant access to the workings by such openings as he may deem convenient, and through any adjacent claim of the defendant, whereas the means of access necessary should have been determined and fixed by the order itself, strictly limiting the examination to the workings of which it is necessary for the plaintiff to have knowledge, and to make surveys and maps; thus protecting the defendant from an inspection of workings not involved in the controversy.

Again, the court fixed the cost of lowering and hoisting the agents of the plaintiff while engaged in the inspection of the claim, without hearing evidence. This was entirely arbitrary and unwarranted, to the same extent that it would have been error to require the defendant to lower and hoist the inspectors without requiring the plaintiff to pay the costs of the inspection. (Code of Civil Procedure, Sec. 1317; *State ex rel. Parrot S. & C. Co.* v. *District Court, supra.*) The relator presses upon our attention this feature of the order, and contends that the requirement that the defendant shall lower and hoist the agents of the plaintiff into and from the underground workings by means of its own appliances is in contravention of Section 1 of the fourteenth amendment of the Constitution of the United States, prohibiting the deprivation of property without due process of law, and also of the provision of the Constitution of the state prohibiting the taking or damaging of private property

without just compensation first made to the owner thereof. (Constitution, Art. III, Sec. 14.) This contention was disposed of in *State ex rel. Parrot S. & C. Co.* v. *District Court, supra.* What is there said we think is conclusive. It would be idle to hold that the district court may make these orders of inspection, and then, by giving to the constitutional provisions the construction contended for by the defendant, say that it is powerless to carry them into effect. The power to make such orders implies the power necessary to make them effective, and the mere temporary, though enforced, use of the appliances in possession of the adverse party, without which access to the property must be impossible, is not in violation of the constitutional guaranty referred to.

The district court is therefore directed (1) to amend its order by fixing a time not only at which the inspection of papers is to begin, but the length of time during which it is to continue; (2) to exclude therefrom letterpress copies of the letters referred to, as well also all letters not relating directly to the acquisition by defendant of the Comanche claim and the stock of the Comanche Mining Company; (3) to modify the order by designating the particular shaft through which it may be necessary for the plaintiff's agents to go in order to inspect the underground workings of the Comanche property, and, if it appears that access may be had to all the workings through the Comanche shaft, to limit the right of access through that exclusively; and (4) to ascertain what will be the reasonable cost of the use of the appliances at the time for the making of the inspection, and require payment thereof by the plaintiff. In order to amend and modify the order in conformity with these directions, the court is directed to hear such further testimony as may be necessary.

Mr. JUSTICE HOLLOWAY: I agree with the majority of the court in the views expressed above, except as to the fourth modification enumerated. This feature of the case presents the same question as that determined in paragraph 5 of the opinion

in *State ex rel. Parrot S. & C. Co. v. Dist. Court*, 28 Mont. 528, 73 Pac. 230, and I dissent from the views of the court expressed as to this modification, for the reasons stated in my dissenting opinion in that case, found at page 547.