STATE EX REL. CITY OF HELENA, RELATOR, *v.* HELENA WATERWORKS CO. ET AL., RESPONDENTS.

(No. 2,996.)

(Submitted April 1, 1911. Decided April 12, 1911.)

[115 Pac. 200.]

*Injunction—Supreme Court—Original Jurisdiction—Constitution—Municipal Corporations—Nature of Powers.*

Supreme Court—Original Jurisdiction—Constitution.
   1. The supreme court may not take original jurisdiction in any case unless authority to do so is found in the Constitution.
Same—Appellate Jurisdiction—Constitution.
   2. The appellate jurisdiction granted the supreme court in section 2, Article VIII of the Constitution, is properly invoked by appeal only (or perhaps by writ of error), and is confined in its exercise to a review of cases which have been decided by the district courts.
Same—Supervisory Control Over Inferior Courts—Constitution.
   3. The supervisory power of the supreme court granted by section 2, Article VIII of the Constitution, was designed to control summarily the course of litigation in the inferior courts and prevent injustice being done through a mistake of law or a willful disregard of it, where there is no appeal from the erroneous action, or where, there being an appeal, the relief obtained thereby would be inadequate.
Same—Injunction—Power to Issue, When.
   4. To authorize the supreme court to issue the writ of injunction in the exercise of its original equity jurisdiction (as distinguished from its power to grant the writ to preserve the subject of the

action pending appeal) the rights of the public, *i. e.*, those of the state or some subdivision thereof, must be involved.

Municipal Corporations—Nature of Powers.

5. A municipality possesses two classes of powers, (1) those which are governmental, legislative or public, and (2) those which are proprietary or private; in the exercise of the second class of powers it does not act as an agency of the government,' but as a corporate individual representing the private advantage of the community for the government of which it was created.

Same—Injunction—Supreme Court—Original Jurisdiction.

6. In seeking to provide a water supply and construct a system for itself and its inhabitants, a city acted in its private corporate capacity, as distinguished from an exercise of its public powers; hence, under the rule declared in paragraph 5, *supra,* it was in no position to invoke the original jurisdiction of the supreme court, by way of injunction, in a controversy arising in connection with that enterprise.

MR. JUSTICE SMITH dissenting.

Original application by the state, on the relation of the city of Helena, against the Helena Waterworks Company and others, for an injunction. Dismissed.

*Mr. Edward Horsky,* City Attorney, and *Mr. C. W. Wiley,* submitted a brief in behalf of Relator. *Mr. Horsky* argued the cause orally.

*Messrs. Gunn & Hall, Mr. J. A. Walsh,* and *Mr. Walter Hartman,* submitted a brief in behalf of Respondents. Oral argument by *Mr. M. S. Gunn, Mr. Walsh,* and *Mr. Hartman.*

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Application for an injunction. The purpose sought by this application is to have this court, in the exercise of original jurisdiction compel the several defendants to dismiss certain actions brought by them and now pending against the relator, the city of Helena, and to refrain from instituting others of a similar character hereafter. The actions described in the petition are: One instituted by the defendant Charles E. Bockus, as receiver of the Helena Waterworks Company, in the circuit court of the United States for the district of Montana, to enjoin the issuance and sale of bonds by the city to procure funds for the purpose of installing its own water supply system; a second, brought

by the defendants Lokowich, Stabler, the two Baums, Fisher, Davies, Dallas, Thompson, Beatty, and Filson, in the district court of the Ninth judicial district of Montana, in and for Broadwater county, to restrain the city from diverting from Beaver creek, in said county, any of the water flowing therein and conveying it to the city, the same being outside of the watershed drained by the stream; and a third, brought in the same court for the same purpose as the foregoing, by the defendant Custer Mines Consolidated Company. The defendants Gunn, Hall, Hartman, and Walsh are the attorneys, each representing some one or more of the plaintiffs in these several actions. It is alleged, in substance, that they, conspiring together with the said Bockus and others, have brought and procured to be brought all of the said actions, well knowing that the alleged rights involved therein have heretofore been fully adjudicated by the courts of Montana, and that the said actions are wholly without merit, for the sole purpose of embarrassing the city in making a sale of its bonds, and to obstruct it in the prosecution of its purpose to install its water system to supply its inhabitants with water. As a reason why this court should assume original jurisdiction, it is alleged that, since an appeal would lie from the decision of any action or proceeding brought in a district court to obtain relief, such decision would not be effective because of the delay necessarily incident to the appeal; it being necessary and desirable that the sale of bonds now advertised should be consummated.

The defendants, in response to an order to show cause, made upon the presentation of the application, filed their answers, reserving, however, the right to question the power of this court to grant the relief prayed for. The cause was then submitted for final judgment, upon the pleadings, a transcript of the testimony of several witnesses in the form of depositions taken in the action brought by Lokowich and his codefendants, and other documentary evidence. The controlling question presented for decision arises upon the objection of the defendants to the jurisdiction of this court. Even without objection, what-

ever may be the merits of a controversy from a judicial point [1] of view, this court may not assume original jurisdiction in any case unless authority to do so is found in the Constitution.

This court was created by the Constitution. That instrument is the charter of its power. The assumption by it to exercise a power not expressly granted or necessarily implied would be a usurpation. On the other hand, a refusal to exercise any power granted, when properly invoked, would be a clear violation of its duty. When we turn to the Constitution to ascertain the powers conferred, it is apparent that the purpose of the convention that formulated it was to constitute a court exclusively a court of review, with all the auxiliary powers necessary to the exercise of this jurisdiction, except in so far as it expressly declared otherwise. The provisions defining and limiting its powers are found in sections 2 and 3 of Article VIII, as follows:

"Sec. 2. The supreme court, except as otherwise provided in this Constitution, shall have appellate jurisdiction only, which shall be coextensive with the state, and shall have a general supervisory control over all inferior courts, under such regulations and limitations as may be prescribed by law.

"Sec. 3. The appellate jurisdiction of the supreme court shall extend to all cases at law and in equity, subject, however, to such limitations and regulations as may be prescribed by law. Said court shall have power in its discretion to issue and to hear and determine writs of *habeas corpus, mandamus, quo warranto, certiorari,* prohibition and injunction, and such other original and remedial writs as may be necessary or proper to the complete exercise of its appellate jurisdiction."

The different justices are in the latter part of section 3 clothed with power to issue, hear and determine writs of *habeas corpus,* and also writs of *certiorari* to review proceedings for contempt in the district courts; but these powers are conferred upon the justices individually. Consideration of them is not pertinent here. In section 2 the grant is of "appellate jurisdiction only," "except as otherwise provided," and "a general supervisory control over all inferior courts." The appellate

[2]   jurisdiction here granted is properly invoked by appeal only, or perhaps by writ of error, and is confined in its exercise to a review of cases which have been decided by the district [3]   courts.   The supervisory power—which is also appellate in its nature—was designed to control summarily the course of litigation in the inferior courts and prevent an injustice being done through a mistake of law or a willful disregard of it when there is no appeal from the erroneous order, or the relief obtained through the appeal would be inadequate.   Its purpose is pointed out in *State ex rel. Whiteside* v. *District Court,* 24 Mont. 539, 63 Pac. 395.   Its appropriate use is illustrated by the following cases: *State ex rel. Anaconda C. Min. Co.* v. *District Court,* 25 Mont. 504, 65 Pac. 1020; *State ex rel. Shores* v. *District Court,* 27 Mont. 349, 71 Pac. 159; *State ex rel. Sutton* v. *District Court,* 27 Mont. 128, 69 Pac. 988; *State ex rel. Boston & Mont. C. C. & S. Min. Co.* v. *District Court,* 30 Mont. 96, 75 Pac. 956; *State ex rel. Boston & Mont. C. C. & S. Min. Co.* v. *District Court,* 30 Mont. 206, 76 Pac. 206; *State ex rel. Clark* v. *District Court,* 30 Mont. 442, 76 Pac. 1005.   It is not necessary to consider it further here.

By section 3 the jurisdiction granted under section 2 is extended to "all cases at law and in equity."   The rule of interpretation to be applied in order to ascertain the limits of this jurisdiction is embodied in the maxim, "*Inclusio unius est exclusio alterius*"; for in the Declaration of Rights this rule of interpretation is declared as follows: "The provisions of this Constitution are mandatory and prohibitory, unless by express words they are declared to be otherwise."   (Article III, section 29.)   In section 2, above, the word "only" is exclusive. It signifies "no other than," as applied to the objects with reference to which it is used.   Hence it excludes the notion of original jurisdiction in any case, except so far as it is conferred by some other provision.   The word "all," used in section 3, is inclusive, and signifies "the whole number of" with reference to "cases at law and in equity."   Thus again the affirmative words in this section operate to exclude the notion of original jurisdiction over

any case which falls in the designated classes. Hence the authority to assume jurisdiction of the case in hand, if asserted at all, must be found in the grant of power, contained in section 3: to issue, hear, and determine the six original writs enumerated therein, including the writ of injunction.

It will be observed that, while the supervisory and appellate jurisdictions conferred are to be exercised under limitations and regulations prescribed by law, the writs enumerated in section 3 are put into the hands of the court to be made use of at its discretion, to effectuate their appropriate purposes. All of them, except the writ of injunction, are common-law writs, and their uses were at the time of the adoption of the Constitution well defined and understood. It is not necessary to discuss them. The purpose and functions of the writ of injunction are discussed and defined in *State ex rel. Clark* v. *Moran,* 24 Mont. 433, 63 Pac. 390. Inasmuch as it (a nonjurisdictional writ) is found grouped with five other jurisdictional writs, the rule *"noscitur a sociis"* was applied to determine the uses which it must serve, and the conclusion was reached in that case that it was the intention of the convention that it was not to be used as a provisional remedy in aid of an independent equity jurisdiction conferred upon this court,—because none such was conferred,—but as a new prerogative or *quasi* prerogative writ (the equity arm of the court's original jurisdiction) which, together with its associates, would fully equip the court as a court of final resort "on all judicial questions affecting the sovereignty of the state, its franchises or prerogatives or the liberties of the people." In this definition of its purpose we adopted the view of the supreme court of Wisconsin, in *Attorney General* v. *Railroad Companies,* 35 Wis. 425, construing an identical constitutional provision, as follows: "And, plainly recognizing the intention of the Constitution to vest in this court one jurisdiction, by several writs, to be put to several uses, for one consistent, congruous, harmonious purpose, we must look at the writ of injunction in the light of that purpose, and seek its use in the kindred uses of the other writs associated with it. '*Noscitur a sociis*' is an

old and safe rule of construction, said to have originated with as great a lawyer and judge as Lord Hale, peculiarly applicable to this consideration. Lord Bacon gives the same rule in a more detailed form, more emphatic here. '*Copulatio verborum indicat acceptationem in eodem sensu.*' Here are several writs of defined and certain application classed with one of vague import. We are to be guided, in the application of the uncertain, by its certain associates. The joinder of the doubtful writ with the defined writs operates to interpret and restrict its use, so as to be accepted in the sense of its associates; so that it and they may harmonize in their use, for the common purpose for which it is manifest that they were all given. And thus, in this use and for this purpose, the Constitution puts the writ of injunction to prerogative uses and makes it a *quasi* prerogative writ." The writ is classed as correlative to the writ of *mandamus,* to be resorted to to restrain excess, just as *mandamus* may be used in the same class of cases to compel action and supply defects. Its use was limited to cases strictly *publici juris*—those which directly affect the sovereignty of the state, its franchises or prerogatives, or the liberties of the people, and in which the interests of the state are primary and not remote. After further consideration of the subject, we are satisfied that the limitation of its use thus made is proper. Public and private rights may be involved in the same case, and, in protecting the public rights, private rights may incidentally be protected and enforced; yet the rights of the public—that is, of the state—must be the paramount and moving consideration.

Section 6255 of the Revised Codes, among other things, provides: "No action to obtain an injunction must be commenced in the supreme court, except in cases where the state is a party, or in which the public is interested, or the rights of the public are involved, but the proper district court has jurisdiction of all injunctions, and the commencement of all actions therefor, except as in this section provided. The supreme court may provide rules for the commencement and trial of actions for injunctions in that court." As has already been said, the use

of the writ and its associates is by the Constitution lodged exclusively in the discretion of this court. Therefore the legislature may not define or limit their use. Nevertheless, in this provision we have a legislative definition of the purposes for which it may be used, which is the same, though expressed in different terms, as that laid down in *State ex rel. Clarke* v. *Moran, supra.* Under the definition thus made by the legislature, a right of the state, or, what is the same thing, some public [4] interest, must be the subject of the controversy, put in issue by the state itself as a party, or by someone acting in its behalf or by its authority. In the case of *Finlen* v. *Heinze,* 27 Mont. 107, 69 Pac. 829, 70 Pac. 517, this court issued a writ of injunction. But this was as an auxiliary only, for the purpose of preserving the subject of the action until the appeal could be determined. This was in no sense an exercise of original jurisdiction.

In this case no interest of the public—that is, of the state— is involved. In its comprehensive sense, the term "public" is the opposite of the term "private," and applies to the affairs of the state or some division thereof, as opposed to those of a private citizen. A municipality, such as the city of Helena, [5] possesses two classes of powers: (1) Those which are governmental, legislative, or public; and (2) those which are proprietary or private, or, as is sometimes said, *quasi* private. In the exercise of the first, it is an instrumentality of the state government, and, to the extent of its powers of this character, it is a part of the state sovereignty. It is the public to its inhabitants and those who fall within the purview of its authority. In the exercise of the second class of powers, it does not act as an agency of the government, but rather as a legal personality or corporate individual representing the private advantage of the compact community for the government of which it is created. (1 Dillon on Municipal Corporations, 4th ed., sec. 66; *Illinois Trust & Savings Bank* v. *City of Arkansas City,* 76 Fed. 271, 22 C. C. A. 171, 34 L. R. A. 518, and cases cited.) Therefore, in seeking to provide a water system and a supply for itself

and its inhabitants, it acts exclusively in its private corporate
[6] capacity, and, in all controversies arising in connection
with this enterprise, it stands, for the time being, upon the same
footing as any other private corporation, and is entitled to in-
voke the same remedies, and no others. In the prosecution of
this proceeding it acts in its private capacity; not as a repre-
sentative of the sovereignty of the state. Therefore it must be
remanded to the appropriate district court for such relief as it
may be entitled to.

In anything said herein we do not wish to be understood as
holding that a state court may in any case issue an injunction
to stop proceedings in a federal court.

The order to show cause is set aside, and the proceeding dis-
missed.

*Dismissed.*

MR. JUSTICE HOLLOWAY: In *State ex rel. Clarke* v. *Moran,* this
court determined that it does not have the jurisdiction sought
to be invoked in this proceeding, and, while I do not subscribe
to all that is said in that case, the decision ought not to be re-
versed except for the most cogent reasons. It is necessary that
due consideration be given the former decisions of courts of last
resort, to the end that litigants may know upon what they are
to rely. I concur in the result reached by the Chief Justice,
primarily upon the ground of *stare decisis;* but, if it be assumed
that this court has original jurisdiction in equity cases, the
record before us does not justify an order directing the dismis-
sal of the suit in the federal court or the suit instituted by the
Custer Mines Consolidated Company; and, with those cases
pending, it is not made to appear that any advantage whatever
would accrue to the city of Helena by having the Lokowich suit
dismissed. If this court has jurisdiction, it ought to be exer-
cised only in cases where the wrong to be averted is imminent
and substantial relief can be awarded. The presentation of a
mere abstract right, without any beneficial result to flow from
it, is not sufficient to justify interference.

43 Mont.—12

MR. JUSTICE SMITH: I dissent. While I agree, in a general way, with the conclusions of law reached by the Chief Justice, I am yet of opinion that the very extraordinary and remarkable circumstances leading up to the institution of the case of *Lokowich et al.* v. *City of Helena* demand that this court enjoin the further prosecution of that action.