Hamilton County Court of Common Pleas.

PFAU V. BUTTERFIELD, ET AL.

Decided March 25, 1932.

*Alfred Pfau,* for plaintiff.

*Robert N. Gorman,* prosecuting attorney, for defendants.

DARBY, J.

Briefly, the petition alleges that Joseph A. Clark filed his declaration of candidacy for the office of member of the Hamilton County Democratic Central Committee, and at the same time filed his petition purporting to be subscribed and sworn to, and acknowledged by five electors; that a protest against his candidacy was filed, based on the ground that the petition was defective in that he (the candidate) acted as notary public on the petition signed by the electors aforesaid; that the Board of Elections overruled the protest and is about to order the name of said Clark printed as a candidate for said office, on the ballots to be used at the primary election.

The prayer is for a temporary restraining order against the Board of Elections, restraining it from certifying and approving the candidacy of said Clark for said office; and

from placing his name on the ballots for the primary election, and distributing such ballots, and that on final hearing a mandatory injunction issue, ordering said board to rescind its action in dismissing said protest, etc.

A general demurrer was filed on behalf of the defendants, and was argued and submitted. By agreement the facts of the case were heard and submitted to the court, the action of the court to depend upon its action on the demurrer.

1. It is claimed on behalf of the board that in any event the plaintiff is not entitled to the remedy sought by way of injunction, but that if he has any remedy it is by mandamus.

The plaintiff does not seek to compel the performance of a legal duty by the board, but on the contrary the prevention of what he alleges is an illegal duty in placing the name of said Clark on the ballots contrary to law.

Many cases were referred to, clearly distinguishing the remedy by mandamus and injunction, and also sustaining the right to enjoin the illegal expenditure of public money.

There is no claim in this action of illegal expenditure of money, but it is a plain and simple attempt to restrain the commission of an act claimed to be unlawful. The Board will proceed to print the ballots, so there is no case of an attempt to compel it to do which it intends to do.

The case of *State ex rel* v. *Hahn,* 50 O. S., 714 makes the distinction rather clear. The court say on page 718:

"By Section 2745 it is made the duty of the Superintendent of Insurance to *charge and collect* from insurance companies the taxes provided for in that section. No complaint is made that he refuses to perform this duty, but the complaint is that he is too vigorous and aggressive in its performance; that is, he has charged and is about to enforce collection of more than is due, and threatens to revoke the license of the relator unless such taxes as he has charged shall be paid at once. For such a complaint the remedy is clearly by injunction and not by mandamus."

Under the head of "Injunctions," 32 C. J., page 66, Section 47, the following statement appears:

"\* \* \* Nevertheless an injunction may issue where mandamus would not be sufficiently prompt to afford the relief, or for any other reason would not be adequate, and where the relief asked is prohibitory in its nature, injunction and not mandamus is the proper remedy."

*State* v. *Moran,* 24 Mont., 433 is almost identical with the case at bar. Syllabus 3 is as follows:

"Under the Constitutional grant of original jurisdiction to the Supreme Court, the writ of injunction may properly be issued to control a public officer in the exercise of his duties under the election laws, i. e., to restrain him from proceeding under a valid election law to act in excess of his duty."

In that case the election officers were restrained from printing on the ballot the ticket under the designation "Eight Hour Republican Party", when there was no such party properly designated, and that designation was adopted in order to give a dissenting faction a distinguishing designation not recognized by the regular party.

See also: *Brush* v. *Orgill,* 9 N. P. (N. S.), 632; *Norwood* v. *Supervisors of Election,* 13 C. C. (N. S.), 465.

The demurrer of the board is overruled on the ground that the petition does state sufficient facts to constitute a cause of action, and that the remedy sought is not improper.

2. On the hearing of the case all the allegations of the petition were proven, namely—

1. The filing of his declaration of candidacy by Clark.
2. The filing of the petition of five electors of the Twenty-Fifth Ward.
3. That Clark, the candidate, acted as notary public upon said petition, and swore the petitioners and took their acknowledgements.
4. That the protest was filed.
5. That the protest was overruled. .

The question involved is as to whether Sections 4785-71 and 4785-72 General Code have been complied with.

The declaration of candidacy seems to be in all respects proper, and was signed by the declarant and sworn to by him before a notary public.

The petition of the five electors purports to have been signed by five electors, and was sworn to and acknowledged by Clark, the candidate, acting as notary public.

The petition, in accordance with the General Code, is essential to the candidacy. A petition not sworn to could not be recognized and would not be considered by the board. A petition sworn to before one not authorized to administer oaths would not be considered.

The prosecuting attorney claims that the last clause of Section 4785-72 authorizes the candidate to be a notary public in his own case. The language is:

"In case of a petition for a candidate for member of a party-controlling committee, the five persons signing such petition of candidacy shall subscribe and swear to (or affirm) the same before any person authorized by law to administer an oath or take an affirmation."

Had the Legislature intended to say that it might be taken before the candidate, it could have done that by very simple language; but it is clear that there are several acts to be performed—one is a declaration of candidacy by the candidate, another is a petition supporting said candidacy, another is the administering of the oath to the petitioners. This is not a case in which the attorney for an interested party may take an affidavit, but it is a case of the interested party himself acting as notary public.

It was never within the contemplation of the legislature in authorizing commissions to be issued to notaries public, that they should act in their own cases, and there is nothing in the election law to indicate that.

There is a very clear purpose on the part of the legislature to purify elections, and to keep them clear of taint or possibility of fraud.

No suggestion is made in this case that the candidate had any fraudulent purpose in what he did, but it is the possibility of fraud on the public that must be considered.

There is no difficulty in suggesting instances in which fraud might operate in such a situation, as, if after the signatures of the persons petitioning for the candidate one

of them should deny his signature, the candidate-notary public would necessarily be a witness and a question of veracity might arise between him and the signer of his petition.

It is not without the range of possibility that the disqualified persons might sign such petitions, and again, here would be the necessity of resorting to testimony of the candidate-notary public on that matter, and there would not be in either case or in many other cases that might easily be imagined, an independent officer acting as a notary public.

The petition for candidacy required to be filed and filed in this case, contains a statement of the politics of the candidate, and that he is "in our opinion well qualified to perform the duties of the office for which he is a candidate." It is to this petition and this statement of qualification that the candidate-notary public has sworn the petitioners.

*Skinner's Notaries Manual* (1927), page 63, Section 41:

"Though a person may be eligible to hold the office of notary, he may be disqualified to act in certain cases by reason of having an interest. The degree of interest which will render the notary incompetent cannot be summed up in any rule which will operate as a safe test in every case; each case must be decided on its own facts and particular circumstances. To state the rule broadly: If the notary is a party to or directly and pecuniarily interested in the transaction, he is not capable of acting in that case. For example, a notary who is a grantee or mortgagee in a conveyance or mortgage is disqualified to take the acknowledgement of the grantor or mortgagor; likewise a notary who is a trustee in a deed of trust, and of course a notary who is a grantor could not take his own acknowledgement. A notary beneficially interested in the conveyance by way of being secured thereby is not competent to take acknowledgement of the instrument; but where there are several grantees in a deed, each taking a separate and definite interest, the acknowledgement of the deed by one of the grantees as a notary will be valid as to all the grantees except himself.* * *"

The section quoted from contains many other cases to the same effect.

In *Amick* v. *Woodworth, et al,* 58 O. S., 86, the question as to the authority of a grantee to act as notary public arose. The court held:

"1. A grantee in an instrument for the conveyance or incumbrance of real property is disqualified on grounds of public policy to be an attesting witness to its execution, or to act in an official character in taking and certifying the acknowledgement of the grantor.

"2. A mortgage with but one attesting witness beside the mortgagee, or the acknowledgement of which was taken by him as a notary public is not entitled to record, nor valid, though admitted to record, as against a subsequent, properly executed and recorded mortgage."

The court in deciding the case say, page 99:

"The statute does not in express terms forbid a grantee in an instrument for the conveyance or incumbrance of real property to take and certify the grantor's acknowledgement, nor disqualify him as a witness to its execution, nor declare an instrument so attested and acknowledged to be void. Nor does the effect of such an attestation or acknowledgement on the validity of the instrument appear to have been considered in any reported decision of this state."

The Court however, puts the invalidity of a grantee to act as a notary public on the broad ground of public policy and the prevention of frauds.

The law requires that the petition in this case shall be signed, sworn to and acknowledged before an officer authorized (not generally but in such case) to administer oaths.

The court being of the opinion that it is against public policy and would be opening the door to the perpetration of frauds to recognize the validity of a petition sworn to and acknowledged before the candidate in whose behalf the petition is filed, finds the issues in the case in favor of the plaintiff, and that he is entitled to an order restraining the Board from certifying the name of Joseph A. Clark as such candidate, or printing his name on the ballot.